Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
02/05/2016 09:12 AM CST

State of Nebraska, appellee, v.
Matthew G. Hinrichsen, appellant.
___ N.W.2d ___

Filed February 5, 2016.    No. S-14-083.

1. **Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
2. **Statutes.** The meaning and interpretation of a statute present a question of law.
3. **Jury Instructions.** Whether jury instructions are correct is a question of law.
4. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.
5. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.
6. **Homicide: Lesser-Included Offenses: Jury Instructions.** Where murder is charged, a court is required to instruct the jury on all lesser degrees of criminal homicide for which there is proper evidence before the jury, whether requested to do so or not.
7. **____: ____: ____.** A trial court is required to give an instruction on manslaughter where there is any evidence which could be believed by the trier of fact that the defendant committed manslaughter and not murder.
8. **Jury Instructions.** A trial court is not obligated to instruct the jury on matters which are not supported by evidence in the record.
9. **Criminal Law: Due Process: Proof.** Due process requires a prosecutor to prove beyond a reasonable doubt every fact necessary to constitute the crime charged.

10. **Constitutional Law: Due Process.** The due process requirements of Nebraska's Constitution are similar to those of the federal Constitution.

11. **Jury Instructions.** A jury instruction based on the language of a statute is sufficient.

12. **Homicide: Jury Instructions: Due Process: Proof.** In a first degree murder case, an explicit jury instruction advising that the State must prove lack of sudden quarrel provocation beyond a reasonable doubt is not required in order to comport with the dictates of due process.

13. **Homicide: Juries.** In finding beyond a reasonable doubt that a defendant acted with deliberate and premeditated malice, a jury is necessarily simultaneously finding beyond a reasonable doubt that the defendant did not act upon sudden quarrel provocation.

14. **Jury Instructions: Appeal and Error.** The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.

15. ____: ____. When a party assigns as error the failure to give an unrequested jury instruction, an appellate court will review only for plain error.

16. **Pretrial Procedure: Jury Instructions: Evidence: Appeal and Error.** A pretrial ruling on the propriety of a jury instruction is akin to a motion in limine on an evidentiary ruling. An appellant must make a timely request for the jury instruction at trial in order to preserve the issue for appeal.

17. **Homicide: Photographs.** In a homicide prosecution, photographs of a victim may be received into evidence for the purpose of identification, to show the condition of the body or the nature and extent of wounds and injuries to it, and to establish malice or intent.

18. **Trial: Juries: Appeal and Error.** Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.

19. **Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

Appeal from the District Court for Antelope County: JAMES G. KUBE, Judge. Affirmed.

James R. Mowbray and Todd W. Lancaster, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ., and Bishop, Judge.

Heavican, C.J.

A jury convicted Matthew G. Hinrichsen of two counts of first degree murder for the killing of Victoria D. Lee and her husband, Gabino A. Vargas; one count of using a firearm to commit a felony; and one count of possessing a firearm during the commission of a felony. Hinrichsen denied that he intended to kill the victims.

On appeal, Hinrichsen primarily argues that because sudden quarrel provocation negates malice, the step instruction for first degree murder violated his right to due process. We conclude that when the jury found premeditated and deliberate malice beyond a reasonable doubt, it simultaneously found no sudden quarrel provocation beyond a reasonable doubt. Hinrichsen received due process, and his other arguments lack merit. We affirm his convictions and sentences.

## I. BACKGROUND

### 1. Historical Facts

Lee and Hinrichsen began dating in the fall of 2009. In approximately April 2011, they moved into the basement of Hinrichsen's parents' home in Ewing, Nebraska. Lee lived there until at least July 2012. Afterward, she continued to have an "on-again-off-again" relationship with Hinrichsen and still had belongings at the Ewing home. After July, Lee would sometimes stay in Ewing or with her parents in Iowa. At other times, she would spend time in Omaha, Nebraska, where she was taking college courses.

Around the end of 2011, Vargas moved to Ewing to work on a dairy farm located about 2 miles from the Hinrichsens' home. Beginning in midsummer 2012, Lee began to come to the farm to help Vargas. In about September, Vargas began

living in a mobile home on the dairy farm. According to Vargas' roommate, Lee would sometimes stay with Vargas in the mobile home.

Lee and Vargas married on October 22, 2012. But Lee continued to live at the Hinrichsen house part time until October 29, when she moved her things out. On that date, Lee informed Hinrichsen for the first time of her marriage to Vargas. Hinrichsen testified that he and Lee were still romantically involved up until October 29. After October 29, Lee either stayed with Vargas in Ewing or with her parents in Iowa.

During November 2012, Hinrichsen made numerous telephone calls to Lee which were preserved on a digital recorder found in Lee's belongings. In the recordings, Hinrichsen threatened to harm Lee and Vargas and expressed his hatred of Vargas. On November 30, Hinrichsen purchased an AK-47 assault rifle and ammunition.

The homicides occurred during the early morning hours of December 8, 2012. Hinrichsen testified that on December 7, he had "a couple of" mixed drinks at his parents' house late in the afternoon. He then went to a bar in Orchard, Nebraska, where he continued to drink alcohol. Around 6:30 p.m., he made two telephone calls to Lee. He then called his cell phone provider to suspend service to Lee's cell phone, which was still part of his cell phone service plan. The Orchard bartender testified that Hinrichsen spent hundreds of dollars on Keno and told her, "'I can't take it to the grave.'"

At approximately 9 or 10 p.m., Hinrichsen left Orchard and went to a bar in Ewing, where he continued to drink alcohol. He also bought wine or champagne and shared it with other bar patrons, something he did not normally do. Hinrichsen left that bar a little before midnight. At 12:17 a.m., Lee called a 911 emergency dispatcher and reported that someone with a gun was at her house. A recording of the 911 call was admitted into evidence. In the background of the recording, Hinrichsen can be heard yelling, "Die, you fucking bitch. Fucking die. Rot in hell. Fucking die. Fucking burn in hell."

Hinrichsen's profanities continue for about 1½ minutes, and then the recording goes silent. Because Lee's cell phone had been deactivated, the dispatcher could not pinpoint her exact location and instead dispatched officers to the general area. Shortly thereafter, a 911 call reported a fire in the mobile home where Lee and Vargas lived. At 12:33 a.m., Hinrichsen texted a friend: "I'm fucking done with life I love you man good luck."

Hinrichsen arrived at his parents' property around 1 a.m. When his father encountered him, Hinrichsen was naked and told his father that he had killed Lee and Vargas and burned the evidence, including their bodies and his clothes. Hinrichsen also left a suicide note for his parents. When law enforcement officers arrived a short time later and encountered Hinrichsen on the property, he was wearing only a rain poncho and was carrying an automatic pistol. Hinrichsen yelled things at the officers, including "'[k]ill me. . . . I don't deserve to live.'" Hinrichsen's father got the gun away from Hinrichsen before the officers arrested him. Officers then put out a fire in a burn barrel and found the clothes Hinrichsen had been wearing that evening. Officers also found an AK-47 rifle and ammunition hidden on the property, as well as a bloody coat. In the vehicle that Hinrichsen had been driving, officers found blood on the console and an empty magazine clip.

At trial, Hinrichsen admitted that he had killed Lee and Vargas. He testified, however, that he did not intend to kill them. According to Hinrichsen, he did not even know that Lee was at Vargas' house on December 7, 2012, because she had texted him earlier that day and said that she was going to Iowa. Hinrichsen explained that at approximately 5 p.m. on December 7, he saw that Lee had changed her surname on a social media site and became upset. At that point, he decided to go to the bars. Around midnight, he got sick and decided to go home. On the way home, he decided to go to Vargas' home to scare him into moving away. Hinrichsen had an AK-47 rifle and a .22-caliber pistol with him because he had planned to go

hunting. When he arrived at Vargas' home, he saw Lee's car in the driveway and "lost control" because Lee had said she was going to Iowa. Because he was angry, he rammed Vargas' vehicle twice. Hinrichsen testified that he then grabbed the AK-47 rifle and took it with him to the door of the residence to intimidate Vargas.

Hinrichsen yelled and beat on the door, but it was locked. He shot out the window and unlocked the door. He then beat on Vargas' bedroom door, but it was either locked or being held shut. Hinrichsen fired two shots into the door, and after doing so, was able to push his way into the room. He found Vargas lying in a pool of blood on the floor by the door and not moving. An autopsy showed Vargas died as a result of gunshot wounds to the chest. Hinrichsen then saw Lee on the telephone asking for help as she knelt naked by the bed. According to Hinrichsen, her nakedness made him angrier. He went toward her, and Lee fell, either when she tried to run around the bed or when he shoved her. When Lee fell, Hinrichsen began hitting her with the barrel and the butt of the AK-47 rifle. An autopsy showed Lee died as a result of blunt force trauma to her head.

At some point, Hinrichsen set Vargas' residence on fire. Hinrichsen claimed he did not do so immediately after the attack, but instead first drove to his parents' home where he decided to shoot himself, but then realized the AK-47 was not functional. At that point, the killings seemed "surreal" to him, so he drove back to Vargas' home to see if Lee and Vargas were really dead. According to Hinrichsen, the scene was "pretty gruesome" and he "didn't want to leave that behind," so he set the residence on fire. When he returned to his parents' house, he left a suicide note for his parents and tried to burn his bloody clothes because he "didn't want anybody to find me like that." He hid the AK-47 rifle in the attic, put on a rain poncho, and grabbed the .22-caliber pistol with the thought of killing himself with the pistol. Hinrichsen changed his mind after realizing the bullet would probably only be big

enough to hurt him, but not kill him. When he saw a sheriff's vehicle, he began yelling profanities and asking officers to shoot him.

## 2. PROCEDURAL HISTORY

Before trial, Hinrichsen submitted a written motion asking the court to instruct the jury on the defense of intoxication. The court overruled the motion after finding that Neb. Rev. Stat. § 29-122 (Cum. Supp. 2014) eliminated the intoxication defense in Nebraska. The court rejected Hinrichsen's argument that § 29-122 was unconstitutional because it relieved the State of its burden to prove his mental state beyond a reasonable doubt. At the jury instruction conference at the close of trial, Hinrichsen neither requested an intoxication instruction nor submitted a proposed intoxication instruction to the court.

Hinrichsen did, however, object to the court's proposed jury instructions for each count of first degree murder and to the court's definition of a "sudden quarrel." Hinrichsen also offered alternative instructions on both of these issues. The court overruled his objections and rejected his alternative instructions. Hinrichsen did not object to the court's proposed instruction on premeditation at the jury instruction conference, but did offer an alternative premeditation instruction.

The jury returned a guilty verdict on all four counts. The court sentenced Hinrichsen to terms of life-to-life imprisonment for each murder conviction. It sentenced him to consecutive terms of 25 to 30 years' imprisonment for possession of a firearm during the commission of a felony and 40 to 50 years' imprisonment for use of a firearm to commit a felony. This is Hinrichsen's direct appeal from his convictions and sentences.

## II. ASSIGNMENTS OF ERROR

Hinrichsen assigns the trial court erred in (1) not instructing the jury that the State, as an element of first degree murder, had to prove the killings were not the result of a sudden

quarrel brought about by a sufficient provocation; (2) improperly instructing the jury on the definition of "sudden quarrel"; (3) improperly instructing the jury on the definition of "premeditation"; (4) not giving Hinrichsen's requested instruction on intoxication; and (5) admitting photographic evidence of the victims while they were alive.

### III. STANDARD OF REVIEW

[1,2] An appellate court independently reviews questions of law decided by a lower court.[1] The meaning and interpretation of a statute present a question of law.[2]

[3-5] Whether jury instructions are correct is a question of law.[3] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[4] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[5]

### IV. ANALYSIS

[6-8] The trial court instructed the jury on first degree murder, second degree murder, and manslaughter. Where murder is charged, a court is required to instruct the jury on all lesser degrees of criminal homicide for which there is proper evidence before the jury, whether requested to do so or not.[6] A

---

[1] See *State v. Hunnel*, 290 Neb. 1039, 863 N.W.2d 442 (2015).

[2] See *State v. McIntyre*, 290 Neb. 1021, 863 N.W.2d 471 (2015).

[3] *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

[4] *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015); *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012).

[5] *State v. Loyuk*, 289 Neb. 967, 857 N.W.2d 833 (2015); *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013).

[6] See, Neb. Rev. Stat. § 29-2027 (Supp. 2015); *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012).

trial court is required to give an instruction on manslaughter where there is any evidence which could be believed by the trier of fact that the defendant committed manslaughter and not murder.[7] A trial court is not obligated to instruct the jury on matters which are not supported by evidence in the record.[8] Here, no one challenges the fact that the trial court found the evidence sufficient to warrant an instruction on manslaughter, and we therefore do not address that issue.

### 1. First Degree Murder Instructions

Hinrichsen assigns that the trial court's instructions on the first degree murder charges were erroneous in several respects. We address each argument in turn.

### (a) Sudden Quarrel

Hinrichsen's primary argument is that the court failed to instruct the jury that the State had to prove beyond a reasonable doubt that the killings were not the result of a sudden quarrel brought about by a sufficient provocation in order to convict him of first degree murder. He contends that by failing to give an express instruction to this effect, the court violated his right to due process of law. Hinrichsen's argument is premised on the proposition that the malice element of murder is negated by evidence that the killing was provoked by a sudden quarrel provocation,[9] so that the jury must be able to consider that the existence of sudden quarrel provocation negates malice. He contends the instructions given did not allow the jury to consider this crucial issue. Alternatively, Hinrichsen contends the court should have defined the term "sudden quarrel" to clarify that provocation negates the element of malice in a first degree murder charge.

---

[7] *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

[8] *Id.*

[9] See, *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013); *Smith, supra* note 7; *State v. Lyle*, 245 Neb. 354, 513 N.W.2d 293 (1994).

### (i) Court's Instructions and Hinrichsen's Proposed Instructions

The trial court instructed the jury using an acquittal first step instruction. The jury was instructed that the elements of first degree murder were that Hinrichsen killed the victims (1) purposely and (2) with deliberate and premeditated malice. The jury was instructed that if it found the State had proved each of these elements beyond a reasonable doubt, it was the jury's duty to convict Hinrichsen of first degree murder. If, however, the jury found the State had failed to prove any of the elements beyond a reasonable doubt, the jury was to then consider whether the State had proved second degree murder. The jury was instructed that the elements of second degree murder were that the killings occurred (1) intentionally (2) without premeditation and (3) not upon a sudden quarrel. If the jury found the State had proved each of these elements beyond a reasonable doubt, it was instructed that its duty was to convict Hinrichsen of second degree murder. If, however, the jury found the State had failed to prove any of the elements of second degree murder beyond a reasonable doubt, it was to then consider whether the State had proved manslaughter. The jury was instructed that the elements of manslaughter were that the killing occurred either (1) intentionally upon a sudden quarrel or (2) unintentionally during the commission of an unlawful act.

The court instructed the jury that "[d]eliberate" meant "not suddenly or rashly. Deliberation requires that one consider the probable consequences of his actions before acting." The court instructed that "[p]remeditation" meant "to form a desire to do something before it is done. The time needed for premeditation may be so short as to be instantaneous, provided that the intent to act is formed before the act and not simultaneously with the act." The court instructed that "[m]alice" meant "intentionally doing a wrongful act without just cause or excuse." And the court instructed that "[s]udden quarrel" meant

that level of provocation sufficient to cause a reason-
able person to lose normal self-control; passion suddenly
aroused which clouds reason and prevents rational action.
It does not necessarily require an exchange of angry
words or an altercation which occurs at the same time as
the killing. It does not require a physical struggle or other
combative bodily contact between the defendant and the
victim. It is a degree of provocation which excites the
passion of a reasonable person enough to obscure one's
power of reasoning, resulting in an action which occurs
rashly, without due deliberation and reflection. It does
not, however, include specific individual qualities of the
defendant which might render him particularly excitable,
such as voluntary intoxication.

Hinrichsen's proposed instructions were substantially simi-
lar to those given by the court but would have included, as an
additional element of first degree murder, that the State needed
to prove that he did not kill the victims upon a sudden quarrel.
Alternatively, Hinrichsen proposed to refine the definition of
the term "sudden quarrel" given to the jury by adding a state-
ment that "[p]rovocation negates the element of malice found
in the crime of first degree murder."

### *(ii)* State v. Smith

The jury instructions given properly enumerated each
statutory element of each degree of Nebraska homicide.[10]
Nevertheless, Hinrichsen argues they violated his right to due
process of law. To support this argument, he relies extensively
on *State v. Smith*,[11] decided by this court in 2011.

In *Smith*, we addressed the validity of the Nebraska jury
instructions for second degree murder and voluntary man-
slaughter. The instruction given in *Smith* defined second degree
murder as an intentional killing done without premeditation

---

[10] See Neb. Rev. Stat. §§ 28-303 to 28-305 (Reissue 2008 & Supp. 2015).

[11] *Smith, supra* note 7.

and stated that if the jury found the State proved each of those elements beyond a reasonable doubt, it had a duty to find the defendant guilty of second degree murder. The instruction told the jury it could consider whether the defendant had committed manslaughter only if it found that the State had failed to prove one or more elements of the crime of second degree murder beyond a reasonable doubt. The defendant argued the instruction deprived him of due process because it did not allow the jury to consider whether his intent to kill was the result of a sudden quarrel.

We agreed that the instruction was error. We concluded that in Nebraska, both second degree murder and voluntary manslaughter were intentional crimes. The distinguishing factor between them "is that [for voluntary manslaughter,] the killing, even if intentional, was the result of a legally recognized provocation, i.e., the sudden quarrel, as that term has been defined by our jurisprudence."[12] We reasoned that under the common law, "'homicide, even if intentional, was said to be without malice and hence manslaughter if committed in the heat of passion upon adequate provocation.'"[13] We held that under Nebraska law, "an intentional killing committed without malice upon a 'sudden quarrel,' as that term is defined by our jurisprudence, constitutes the offense of manslaughter."[14]

Based on this clarification of the elements of the crimes of second degree murder and voluntary manslaughter, we concluded that the second degree murder to manslaughter step instruction given in *Smith* was incorrect. Specifically, the instruction was wrong because it "required the jury to convict [the defendant] on second degree murder if it found that [he had] killed [the victim] intentionally, but it did not permit the jury to consider the alternative possibility that the

---

[12] *Id.* at 732, 806 N.W.2d at 393.

[13] *Id.* at 732-33, 806 N.W.2d at 393, quoting A.L.I., Model Penal Code and Commentaries § 210.3, comment 1 (1980).

[14] *Id.* at 734, 806 N.W.2d at 394.

killing was intentional but provoked by a sudden quarrel, and therefore constituted manslaughter."[15] We held that a trial court must give a manslaughter instruction under § 29-2027 (Reissue 2008) when there is any evidence upon which a jury could believe that the defendant committed manslaughter and not murder. But we did not specify the contents of such an instruction. Instead, we held that the trial court's failure to give such an instruction did not prejudice the defendant because there was no evidence to support the giving of the instruction.

Shortly after *Smith* was decided, the Nebraska Court of Appeals misinterpreted our holding in an unrelated case with the same caption:

The Nebraska Supreme Court found that the jury . . . should have been given a step instruction requiring the jury to convict on second degree murder if it found that [the defendant] killed [the victim] intentionally, without premeditation, but that *if the jury acquitted him of that charge*, it could consider the alternative possibility that the killing was intentional but provoked by a sudden quarrel, and therefore constituted manslaughter.[16]

On further review, we clarified that the Court of Appeals had misinterpreted *Smith* "to require a step instruction under which the jury would consider the 'alternative possibility' of voluntary manslaughter only if it acquitted the defendant of second degree murder."[17] We reasoned:

Necessarily implicit in the Court of Appeals' reference to a "step" instruction is that if a jury concludes a defendant killed another intentionally and without premeditation, thereby determining his guilt of second degree murder, it could never consider voluntary manslaughter. That is

---

[15] *Id.*

[16] *State v. Smith*, 19 Neb. App. 708, 722, 811 N.W.2d 720, 734 (2012) (emphasis supplied).

[17] *Smith, supra* note 6, 284 Neb. at 656, 822 N.W.2d at 416.

incorrect because under our holding in *Smith*, both second degree murder and voluntary manslaughter involve intentional killing; they are differentiated only by the presence or absence of the sudden quarrel provocation. If the provocation exists, it lessens the degree of the homicide from murder to manslaughter.[18]

We held that the jury must be instructed as follows:

[W]here there is evidence that (1) a killing occurred intentionally without premeditation and (2) the defendant was acting under the provocation of a sudden quarrel, a jury must be given the option of convicting of either second degree murder or voluntary manslaughter depending upon its resolution of the fact issue regarding provocation.[19]

In *State v. Trice*,[20] we addressed this issue again. There, the trial court had given the jury an acquittal-first step instruction for second degree murder and manslaughter before we issued our 2011 decision in *Smith*. Because the defendant's appeal was pending when we issued *Smith*, we held that the holding of that case applied retroactively to the defendant in *Trice* and that the instruction given was error. We also concluded that the evidence of a sudden quarrel provocation, while weak, was sufficient to support a reasonable inference that the defendant had killed under an adequate provocation. We rejected the State's argument that the jury had implicitly rejected a voluntary manslaughter conviction. We reasoned that the instruction was insufficient to put the sudden quarrel provocation before the jury: "The problem, of course, is that under the instructions given (and presumably followed), the jury never actually considered whether [the defendant] acted upon a sudden quarrel."[21]

---

[18] *Id.* at 656, 822 N.W.2d at 417.

[19] *Id.*

[20] *Trice, supra* note 9.

[21] *Id.* at 192, 835 N.W.2d at 674.

*(iii) Due Process and Sudden Quarrel*

Hinrichsen argues that because a jury in a second degree murder case must be specifically instructed that the State has to prove lack of sudden quarrel provocation in order to prove the murder, a jury in a first degree murder case must also be specifically instructed that the State has to prove lack of sudden quarrel provocation in order to prove the murder. He contends the lack of such an explicit instruction violates his due process rights, because in Nebraska, a sudden quarrel upon sufficient provocation negates the murder element of malice.[22] He relies on the premise that the State may not shift the burden of proof to the defendant when an affirmative defense negates an element of the crime.[23]

[9,10] Due process requires a prosecutor to prove beyond a reasonable doubt every fact necessary to constitute the crime charged.[24] The due process requirements of Nebraska's Constitution are similar to those of the federal Constitution.[25]

In *Mullaney v. Wilbur*,[26] the U.S. Supreme Court applied the due process concept to jury instructions in a case similar to the instant case. The Maine law at issue in *Mullaney* defined murder as the "'unlawful[l] kill[ing] [of] a human being with malice aforethought, either express or implied.'"[27] It defined manslaughter as the "'unlaw[ful] kill[ing] [of] a human being in the heat of passion, on sudden provocation, without express or implied malice aforethought.'"[28] The jury was instructed that if the prosecution established the homicide was both intentional and unlawful, malice aforethought

---

[22] See, *Trice, supra* note 9; *Smith, supra* note 7; *Lyle, supra* note 9.

[23] See *Smith v. U.S.*, ___ U.S. ___, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013).

[24] *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[25] *State v. Putz*, 266 Neb. 37, 662 N.W.2d 606 (2003).

[26] *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

[27] *Id.*, 421 U.S. at 686 n.3.

[28] *Id.*

(murder) was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation (and committed only manslaughter). The jury was further instructed that malice aforethought and heat of passion on sudden provocation were two inconsistent things, so that by proving the existence of the latter, the defendant would necessarily negate the existence of the former and reduce the homicide from murder to manslaughter. The Court reasoned that this shifting of the burden of persuasion was improper because it required the defendant to prove the lack of an element, malice aforethought, required to convict him of murder. The Court held "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case."[29]

Two years later, the Court decided *Patterson v. New York*,[30] another jury instruction case similar to the instant case. In *Patterson*, the defendant was charged with second degree murder, which New York defined as intentionally causing the death of another person. New York defined manslaughter as the intentional killing of another "'under circumstances which do not constitute murder because [the actor] acts under the influence of extreme emotional disturbance.'"[31] New York required the defendant to demonstrate the existence of extreme emotional disturbance by a preponderance of the evidence in order to reduce the murder to manslaughter, and the jury was so instructed.

The defendant in *Patterson* appealed, arguing this instruction and shifting of the burden of persuasion violated the dictates of *Mullaney*. But the Court held this was constitutional.

---

[29] *Id*., 421 U.S. at 704.

[30] *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977).

[31] *Id*., 432 U.S. at 199.

It reasoned that under the New York scheme, in order to prove murder, the State had to prove the death, the intent to kill, and causation beyond a reasonable doubt. Thus, the State had the burden of persuasion on all the essential elements of the crime. This distinguished the New York law from the Maine law at issue in *Mullaney*, where the element of malice aforethought was *presumed* if the State proved intent, and the defendant then had to disprove it. The Court reasoned that the New York affirmative defense of an extreme emotional disturbance did not "serve to negate any facts of the crime" and that thus, it was appropriate to require the defendant to carry the burden of persuasion on the defense.[32] The Court specifically held that it would not adopt "as a constitutional imperative . . . that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused."[33] Instead, it clarified that the "Due Process Clause requires the prosecution to prove beyond a reasonable doubt *all of the elements included in the definition of the offense* of which the defendant is charged."[34]

[11] As noted, first degree murder in Nebraska occurs when a person kills another purposely and with deliberate and premeditated malice.[35] The jury was so instructed in this case, and a jury instruction is sufficient if it uses the language of the statute.[36] Here, due process did not require more. Under *Patterson*, due process is met as long as the State has to prove beyond a reasonable doubt all of those enumerated elements: a killing, done purposely, with deliberate and premeditated malice. In the instant case, the jury was instructed that to convict Hinrichsen of first degree murder, it had to find "from the

---

[32] *Id.*, 432 U.S. at 207.

[33] *Id.*, 432 U.S. at 210.

[34] *Id.* (emphasis supplied).

[35] § 28-303(1).

[36] See *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011).

evidence beyond a reasonable doubt" that he killed the victims, that he did so purposely, and that he did so with deliberate and premeditated malice. There was no burden imposed on the defendant to disprove any of these elements.

But Hinrichsen contends that due process was violated because the jury was not expressly instructed that the State was required to prove the absence of sudden quarrel provocation. He contends that such an instruction is necessary because "malice is an element of first degree murder and a sudden quarrel upon sufficient provocation negates malice."[37] In *Smith v. U.S.*,[38] the Court recently clarified that the principle of due process is violated if the State shifts the burden of proof to a defendant where the defendant's affirmative defense negates an element of the crime. Hinrichsen generally argues this principle was violated because the nature of the acquittal-first step instruction effectively prevented the jury from considering his sudden quarrel defense until it had already found him guilty of first degree murder.

Several federal courts have rejected similar arguments. In *Dunckhurst v. Deeds*,[39] the defendant was convicted of first degree murder. He filed for habeas relief, contending the trial court erred by denying his request for a jury instruction explicitly requiring the State to prove the homicide was not committed in the heat of passion (with provocation). The Ninth Circuit examined all of the jury instructions given and concluded that even though no express instruction requiring the State to disprove provocation was given, the jury was properly instructed that the State had the burden to prove beyond a reasonable doubt every element of the offense of first degree murder. Specifically, the jury was instructed that it had to prove the killing was with deliberation and premeditation and that it was done without legal cause or excuse. The court reasoned these

---

[37] Brief for appellant at 21.

[38] *Smith, supra* note 23.

[39] *Dunckhurst v. Deeds*, 859 F.2d 110 (9th Cir. 1988).

instructions, viewed as a whole, adequately informed the jury of the State's burden of proof.

In *U.S. v. Molina-Uribe*,[40] the defendant was charged with first degree murder.[41] He requested an instruction requiring the government to prove the "absence of sudden quarrel and heat of passion upon sudden provocation" beyond a reasonable doubt, but the court refused the instruction.[42] Reasoning that the murder charge placed no burden of any kind upon the defendant and that he did not have to prove the absence of provocation in order to defeat the murder charge, the Fifth Circuit held the instructions given did not violate due process.

The Fourth Circuit has also weighed in on this issue. In *Gutherie v. Warden, Maryland Penitentiary*,[43] the defendant was convicted of first degree murder. The court found *Mullaney* was violated as to the second degree murder and manslaughter instructions because the jury was instructed that the defendant had the burden of proving he acted in the heat of passion upon sudden provocation in order to reduce the murder to manslaughter. But it reasoned this constitutional error in the instructions was harmless, because the jury actually convicted the defendant of first degree murder and "'in proving the elements of first degree murder beyond any reasonable doubt . . . the state necessarily disproved manslaughter beyond a reasonable doubt.'"[44] The court specifically reasoned that first degree murder required the jury to find premeditation, and because a finding of premeditation necessarily was a finding that the defendant engaged in thought before the act occurred, the premeditation finding

---

[40] *U.S. v. Molina-Uribe*, 853 F.2d 1193 (5th Cir. 1988), *overruled on other grounds, U.S. v. Bachynsky*, 934 F.2d 1349 (5th Cir. 1991), *overruled on other grounds, U.S. v. Johnson*, 1 F.3d 296 (5th Cir. 1993).

[41] See 18 U.S.C. § 1111 (2012).

[42] *Molina-Uribe, supra* note 40, 853 F.2d at 1200.

[43] *Gutherie v. Warden, Maryland Penitentiary,* 683 F.2d 820 (4th Cir. 1982).

[44] *Id*. at 823.

simultaneously negated a finding of manslaughter in the heat of passion.

The rationale that no specific jury instruction on the heat of passion or provocation burden of proof is necessary is also supported by the U.S. Supreme Court's decision in *Victor v. Nebraska*.[45] In the context of analyzing whether the jury instructions given comported with due process by adequately defining the concept of beyond a reasonable doubt, the Court stated:

> [S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, . . . *the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof*. . . . Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."[46]

State courts have also rejected the due process argument that Hinrichsen advances. In *State v. Auchampach*,[47] the defendant was convicted of first degree murder. At trial, he admitted the killings but denied they were premeditated and claimed they occurred in the heat of passion. During the jury instruction conference, the court concluded the defendant had presented sufficient evidence to warrant an instruction on heat of passion manslaughter. However, it refused his request to give the Minnesota jury instruction which enumerated the absence of heat of passion as an element of premeditated first degree murder.

On appeal, the defendant contended this was error, arguing the trial court's "refusal [to give the instruction] relieved the state of proving beyond a reasonable doubt an element of first-degree intentional murder—that [he] did not act in the

---

[45] *Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994).

[46] *Id.*, 511 U.S. at 5 (citations omitted) (emphasis supplied).

[47] *State v. Auchampach*, 540 N.W.2d 808 (Minn. 1995).

heat of passion."[48] In reviewing the argument, the court noted due process required that the jury be instructed on the State's burden to prove beyond a reasonable doubt every element of the crime charged.[49] It also noted that in reviewing the sufficiency of the jury instructions, the instructions must be viewed in their entirety.[50]

The court reasoned that under the applicable Minnesota statute, the absence of heat of passion was not an enumerated element of premeditated first degree murder and that therefore, under *Patterson*, there was no constitutional requirement that the State prove the absence of heat of passion beyond a reasonable doubt before it could convict the defendant of first degree murder.[51] It reasoned, however, that under Minnesota law, the State nevertheless had the burden to so prove the lack of heat of passion in order to obtain a conviction for first degree murder.[52] Notably, it did not find that such a burden meant that the jury had to receive an explicit instruction to that effect. Rather, viewing the jury instructions as a whole, the court reasoned they adequately informed the jury of the State's burden of proof. Specifically, the jury was instructed that it had to find guilt beyond a reasonable doubt, was instructed on the definition of heat of passion, and was instructed that an "unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated."[53] Moreover, the court reasoned that at closing argument, the defendant argued he was not guilty of first degree murder because there was no premeditation and that thus, the jury was fully aware of the issue before it.

---

[48] *Id*. at 816.

[49] *Id.*

[50] *Id.*

[51] *Auchampach, supra* note 47. See *Patterson, supra* note 30.

[52] *Auchampach, supra* note 47.

[53] *Id*. at 818.

In *People v. Hernandez*,[54] the defendant was charged with first degree murder. California defined that crime as an unlawful killing with malice aforethought, premeditation, and deliberation. The jury was instructed that "deliberation mean[t] a decision to kill after a careful weighing of the considerations for and against this choice; premeditation mean[t] a decision to kill before commission of the act that caused death; . . . a '*decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated*.'"[55] The defendant contended these instructions were insufficient because they did not "specifically inform the jury that provocation is relevant to determine whether the defendant killed without premeditation and deliberation."[56] But the court disagreed, stating, "[W]hen the instructions are read as a whole there is no reasonable likelihood the jury did not understand [that provocation is relevant to the issues of premeditation and deliberation.] [T]he jury was instructed . . . that a rash, impulsive decision to kill is not deliberate and premeditated."[57] It thus reasoned that "the jurors would have understood that provocation (the arousal of emotions) can give rise to a rash, impulsive decision, and this in turn shows no premeditation and deliberation."[58]

[12] Following the general rationale articulated by the various federal and state authorities cited, and in light of the fact that lack of sudden quarrel is not a statutory element of first degree murder in Nebraska, we find that an explicit jury instruction advising that the State must prove lack of sudden quarrel provocation beyond a reasonable doubt is not

---

[54] *People v. Hernandez*, 183 Cal. App. 4th 1327, 107 Cal. Rptr. 3d 915 (2010).

[55] *Id*. at 1332, 107 Cal. Rptr. 3d at 920 (emphasis in original).

[56] *Id*. at 1333, 107 Cal. Rptr. 3d at 920.

[57] *Id*. at 1334, 107 Cal. Rptr. 3d at 921.

[58] *Id.*

required in order to comport with the dictates of due process. Instead, the question is whether the jury instructions given, viewed as a whole, adequately informed the jury that the State had the burden to prove lack of sudden provocation beyond a reasonable doubt in order to convict Hinrichsen of first degree murder.

We think it is clear that they did. The instructions given required the State to prove beyond a reasonable doubt that the victims were killed intentionally and with deliberate and premeditated malice. Malice was defined as an act done without just cause or excuse. Deliberate was defined as "not suddenly or rashly. Deliberation requires that one consider the probable consequences of his actions before acting." Premeditation was defined as "to form a design to do something before it is done." The jury was expressly instructed that it could find Hinrichsen guilty of first degree murder only if it found the State had proved each of these elements beyond a reasonable doubt.

[13] Under the plain language of the instructions given, to convict on the first degree murder charge, the State had to prove beyond a reasonable doubt that (1) Hinrichsen's intent to do the act was formed before the act was done (premeditated) and (2) his intent was formed not suddenly or rashly, but instead was formed after he had considered the probable consequences of his act (deliberate). In Nebraska, sudden quarrel is present when there is reasonable and adequate provocation to excite one's passion and obscure and disturb one's power of reasoning to the extent that *one acted rashly and from passion, without due deliberation and reflection*, rather than from judgment. Thus, in finding beyond a reasonable doubt that Hinrichsen acted with deliberate and premeditated malice, the jury necessarily simultaneously found beyond a reasonable doubt that there was no sudden quarrel provocation, i.e., that he did not act without due deliberation and reflection. It is logically impossible to both deliberate and not deliberate at the same time. The crucial question of whether

Hinrichsen acted with deliberate and premeditated malice, or instead acted without due deliberation and reflection, was very much presented to the jury even if the jury was not directly instructed that sudden quarrel provocation negates malice. And the burden of proving whether Hinrichsen acted with deliberate and premeditated malice, and thus did not act under a sudden provocation, rested on the State. There was no shifting of the burden to the defendant.

The first degree murder step instruction given in this case is thus very different from the second degree murder step instruction we addressed in *Smith* and found to be erroneous.[59] The key distinction is that in *Smith*, the jury was prevented from considering the crucial issue—whether the killing, although intentional, was the result of a sudden quarrel. The existence of a sudden quarrel was an additional element the jury needed to consider, but the instruction prevented it from doing so.

Here, the existence of a sudden quarrel is not an additional element. Rather, it is the converse of the enumerated elements of first degree murder.[60] To find Hinrichsen guilty of first degree murder, the jury had to be convinced that none of the evidence, whether offered by the State or by Hinrichsen, raised a reasonable doubt that Hinrichsen killed with deliberate and premeditated malice.[61] Thus, the jury was not in any way prevented from considering the crucial issue. When it decided beyond a reasonable doubt that Hinrichsen killed with deliberate and premeditated malice, it necessarily also decided beyond a reasonable doubt that the converse was true—i.e., his actions were not the result of a sudden quarrel, done "rashly, without due deliberation and reflection." Instead of preventing the jury from considering the crucial issue, the jury instructions here

---

[59] See *Smith, supra* note 7.

[60] See *Auchampach, supra* note 47.

[61] See *Martin v. Ohio*, 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987).

directly presented that issue to the jury for its consideration. And the instructions at all times placed the burden of proof on the State.

Thus, the due process requirements of *Mullaney*,[62] *Patterson*,[63] and *Smith*[64] are met by the Nebraska jury instructions as they currently read—the instructions require the State to prove beyond a reasonable doubt every enumerated element necessary to convict of first degree murder: intent, purpose, deliberation, premeditation, and malice. And the definitions of deliberate and premeditation necessarily require the jury to find the absence of provocation beyond a reasonable doubt in order to find the existence beyond a reasonable doubt of deliberate and premeditated malice. Although the current instructions do not explicitly inform the jury that the State has the burden to disprove sudden quarrel provocation beyond a reasonable doubt in order to convict of first degree murder, the instructions read as a whole do require the State to prove beyond a reasonable doubt that the converse was true: that the actions were done with deliberate and premeditated malice, which necessarily disproves sudden quarrel provocation. These instructions properly keep the burden of disproving the existence of sudden quarrel provocation on the State. There is no unconstitutional shifting of the burden to the defendant.

We have already held as much in at least one recent case. In *State v. Alarcon-Chavez*,[65] the defendant was charged with and convicted of first degree murder. Over the defendant's objection, the trial court gave the standard step instruction from NJI2d Crim. 3.1 defining the elements of first degree murder, second degree murder, and manslaughter. On appeal, he contended the step instruction as to the distinction between second degree murder and manslaughter was incorrect based on our

---

[62] *Mullaney, supra* note 26.

[63] *Patterson, supra* note 30.

[64] *Smith, supra* note 23.

[65] *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012).

holding in *Smith*.[66] We acknowledged he was correct, but rea-
soned the error was not prejudicial to the defendant:

We have held that a defendant convicted of first degree
murder under a step instruction cannot be prejudiced by
any error in the instructions on second degree murder or
manslaughter because under the step instruction, the jury
would not have reached those levels of homicide. . . .

Here, the jury considered how [the victim's] death
occurred and concluded [the defendant] killed her pur-
posely and with deliberate and premeditated malice. *In so
concluding, the jury necessarily considered and rejected
that the killing was the result of provocation and was
therefore without malice*. The jury found the evidence
met the elements of first degree murder. Under these
circumstances where the jury found that premeditation,
intent, and malice existed beyond a reasonable doubt, [the
defendant] was not prejudiced [by any error in the second
degree murder/]manslaughter instruction.[67]

Because the given jury instructions on first degree murder
accurately placed the burden of proof on the State, Hinrichsen's
contention that the district court erred in not adding a sentence
to its definition of sudden quarrel is also without merit. In
future cases, however, it would be a better practice for courts,
in first degree murder cases in which evidence of provocation
has been adduced by the defendant, to clarify the definition
of deliberation. We encourage courts in such cases to define
"deliberate" to mean "not suddenly or rashly, but doing an act
after first considering the probable consequences. An act is not
deliberate if it is the result of sudden quarrel provocation."

## (b) Premeditation

The district court gave the NJI2d Crim. 4.0 instruction for
premeditation, defining that term to mean "to form a design to

---

[66] See *Smith, supra* note 7.

[67] *Id*. at 335, 821 N.W.2d at 368-69 (emphasis supplied).

do something before it is done. The time needed for premeditation may be so short as to be instantaneous, provided that the intent to act is formed before the act and not simultaneous with the act." This definition of premeditation has been repeatedly advanced and affirmed by this court.[68] Hinrichsen submitted a proposed jury instruction defining premeditation to include only the first sentence of the instruction given. He contends his proposed instruction is the statutory definition of premeditation from Neb. Rev. Stat. § 28-302(3) (Reissue 2008) and that this court has exceeded the scope of its authority by expanding on that definition in our cases.

[14] Although Hinrichsen submitted a proposed jury instruction on premeditation, he did not object to the instruction actually given by the district court. The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.[69] Even if the issue had been preserved, there was no error, as our prior cases have not impermissibly expanded the definition of premeditation set forth in § 28-302(3), but instead have simply interpreted the meaning of the term "before" as used in that statute.[70]

2. Voluntary Intoxication

Months prior to trial, Hinrichsen asked the court to give a jury instruction on the defense of intoxication. The State objected, citing § 29-122. That statute, enacted in 2011, provides:

> A person who is intoxicated is criminally responsible for his or her conduct. Intoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the existence of a mental state that is an element of the criminal offense unless the defendant proves, by clear and convincing evidence, that

---

[68] See, e.g., *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011).

[69] See *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2008).

[70] See *Taylor, supra* note 68.

he or she did not (1) know that it was an intoxicating substance when he or she ingested, inhaled, injected, or absorbed the substance causing the intoxication or (2) ingest, inhale, inject, or absorb the intoxicating substance voluntarily.

Hinrichsen argued § 29-122 was unconstitutional and did not bar his intoxication defense. The district court disagreed.

[15] At trial, Hinrichsen did not renew his request for a jury instruction on intoxication or offer a proposed instruction to that effect. Nevertheless, in this appeal, he contends that the trial court erred in not giving one. When a party assigns as error the failure to give an unrequested jury instruction, an appellate court will review only for plain error.[71]

[16] We conclude that Hinrichsen did not preserve the issue for appeal simply by seeking the pretrial order. A pretrial ruling on the propriety of a jury instruction is unusual, and under the circumstances of this case, is akin to a motion in limine on an evidentiary ruling.[72] We have repeatedly held that a pretrial evidentiary ruling is not preserved for appeal unless the issue is raised at trial.[73] We apply that same rationale here and conclude that Hinrichsen did not preserve the intoxication defense issue for appellate review. And we find no plain error in the trial court's refusal to give the instruction.

### 3. Admission of Photograph

During the testimony of Lee's mother, the State offered a photograph of Lee and Vargas on their wedding day. Hinrichsen objected on relevancy grounds, but the trial court overruled the objection. Hinrichsen challenges that ruling on appeal.

[17] The admission of photographs into evidence rests largely within the discretion of the trial court, which must determine their relevancy and weigh their probative value

---

[71] *Kass, supra* note 36.

[72] See, generally, *State v. Herrera*, 289 Neb. 575, 856 N.W.2d 310 (2014); *State v. Pointer*, 224 Neb. 892, 402 N.W.2d 268 (1987).

[73] See *id*.

against their possible prejudicial effect.[74] In a homicide prosecution, photographs of a victim may be received into evidence for the purpose of identification, to show the condition of the body or the nature and extent of wounds and injuries to it, and to establish malice or intent.[75]

[18,19] The State contends the photographs were admitted for identification purposes because the bodies of the victims were burned beyond recognition. We need not decide whether the admission was error, because we conclude any error was harmless error. Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.[76] Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[77] We conclude the actual guilty verdict rendered was surely unattributable to any error in admitting the photograph.

## V. CONCLUSION

For the foregoing reasons, we affirm Hinrichsen's convictions and sentences.

Affirmed.

Stephan, J., not participating.

---

[74] *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[75] *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006).

[76] *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009).

[77] *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012).

Wright, J., concurring in the result.

I respectfully concur in the result, but I write separately to reiterate the rule that Neb. Rev. Stat. §29-2027 (Supp. 2015)

requires the court to instruct the jury on all lesser degrees of criminal homicide for which there is proper evidence before the jury. In a case where there is evidence that a defendant killed intentionally but was acting under a provocation, the jury must be instructed that it has the option of convicting the defendant of voluntary manslaughter or second degree murder or first degree murder depending upon its determination of the fact issue regarding provocation.

Premeditation or provocation are fact issues that should be considered simultaneously when there is proper evidence of a provocation. The logic of this rule is that since provocation negates premeditation and premeditation negates provocation, the jury should consider and decide this question at the same time. When the defendant has presented proper evidence that the defendant was acting under a provocation, that issue should be addressed at the same time that the jury considers whether the act causing the death was premeditated.

In a first degree murder case, the State presents its evidence that the murder was premeditated. If the defendant offers evidence that the killing was the result of provocation, the State's evidence must establish beyond a reasonable doubt that the murder was not the result of a provocation. In that manner, the burden remains upon the State to prove the elements of the crime and thus, the burden of proof never shifts to the defendant. The State disproves the defense of provocation by its evidence of premeditation. The question is whether the State's evidence negates beyond a reasonable doubt the claim of provocation. The State negates the defendant's claim of provocation by presenting evidence that proves beyond a reasonable doubt that the defendant killed the victim with premeditation and malice aforethought.

An acquittal first step instruction precludes the jury from effectively considering the factual issue of provocation in its determination of a defendant's guilt. As the dissent points out, our reasoning in *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012), and *State v. Trice*, 286 Neb. 183, 835 N.W.2d

667 (2013), applies equally to an acquittal first step instruction on first degree murder. Voluntary manslaughter is not a lesser-included offense of first degree murder. And under a step instruction on the three degrees of homicide, the jury must acquit the defendant of first and second degree murder before it considers the issue of provocation. This has the effect of prioritizing the evidence by requiring the jury to consider first and second degree murder before it can consider the evidence of provocation. I agree with the dissent's position that the court is required to instruct the jury in a manner that explains the jury's options under § 29-2027 of whether to convict the defendant of first degree murder, second degree murder, or manslaughter.

But the reason that I concur is that clearly Hinrichsen was not entitled to a provocation instruction. The fact that the trial court instructed on provocation does not establish that Hinrichsen was prejudiced by the court's step instruction. There is simply no evidence that Hinrichsen was provoked into killing two people in the manner that he did.

Connolly, J., dissenting.

I dissent. First, our 2012 decision in *State v. Smith*[1] requires a trial court to instruct a jury of its option to convict a defendant of second degree murder or sudden quarrel (voluntary) manslaughter, depending on its resolution of a provocation defense. This requirement—that a court must instruct the jury on its options for conviction—should also apply to a first degree murder prosecution when a trial court determines that there is adequate evidence of a sudden quarrel provocation to put the issue before the jury. So, under Neb. Rev. Stat. § 29-2027 (Supp. 2015), I believe a court should minimally give two instructions: (1) the jury must consider evidence of a sudden quarrel provocation in deciding whether the State has proved the elements of first degree murder; and (2) it cannot

---

[1] *State v. Smith*, 284 Neb. 636, 822 N.W.2d at 401 (2012).

convict a defendant of murder if it finds that evidence of a sudden quarrel provocation creates a reasonable doubt about the defendant's guilt.

Second, the majority's reasoning in distinguishing *Smith* directly conflicts with due process requirements. I recognize that this court has rejected several due process challenges to jury instructions in first degree murder prosecutions. But our recent decisions and a recent U.S. Supreme Court decision compel me to reevaluate our due process holdings. I conclude federal due process decisions show that we have erroneously upheld acquittal-first step instructions in first degree murder prosecutions with voluntary manslaughter as a lesser degree offense. Because the Due Process Clause requires the State to disprove any affirmative defense that negates an element of the charged crime, we were wrong.

Notably, the majority does not dispute that the State must disprove a provocation defense. Instead, it concludes that under an acquittal-first step instruction in a first degree murder prosecution, the jury necessarily rejects the existence of a sudden quarrel provocation. The majority points out that in 2012, we reached the same conclusion in a per curiam decision, *State v. Alarcon-Chavez*.[2] But the reasoning in *Alarcon-Chavez*, and the majority's reasoning today, is inconsistent with our decisions in *State v. Smith* and *State v. Trice*.[3]

Third, the majority misconstrues or mistakenly relies on federal and state cases that do not support its holding. In doing so, it ignores the majority of jurisdictions that require the prosecution to disprove an adequately raised provocation defense under similar homicide statutes. It is long overdue for this court to join those courts in recognizing that the Due Process Clause requires no less.

---

[2] *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012).

[3] *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013).

## OUR PRE-2011 CASE LAW
## WAS INCONSISTENT

Before 2011, we generally rejected challenges to our acquittal-first step instructions for two reasons. We have reasoned that if a defendant is convicted of first degree murder, the defendant cannot be prejudiced by any error in an instruction for second degree murder or manslaughter, because the jury never reaches those issues.[4] And we have said that because an acquittal-first step instruction provides a logical and orderly process for guiding a jury's deliberations, it is not error to require a jury to consider the greater homicide offense first.[5]

But the cases from other states that we originally cited did not support our conclusion that an acquittal-first step instruction is always appropriate. Specifically, they did not show that a step instruction, without any clarifying instructions, is proper when a jury will only consider a mitigating circumstance in a lesser offense if it acquits the defendant of a greater offense.[6]

Conversely, we reasoned in *State v. Jones*[7] that a jury is free to consider the defendant's guilt of a lesser degree manslaughter offense before deciding his or her guilt of murder. But the fact is that a jury either considers whether a defendant acted under a sudden provocation or does not. And if, as we have often stated, it is true that jurors follow their instructions, then they do not consider a provocation defense in determining a defendant's guilt of murder. So while some of our cases have

---

[4] See, e.g., *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995); *State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994), *overruled on other grounds, State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011), and *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

[5] See, e.g., *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003); *Jones, supra* note 4.

[6] See *Jones, supra* note 4 (citing cases).

[7] *Id.*

been inconsistent, our recent cases have rejected the rationale that a jury considers a defendant's provocation defense.

## *STATE V. SMITH* ALSO REQUIRES AN OPTION INSTRUCTION IN FIRST DEGREE MURDER PROSECUTIONS IF THERE IS ADEQUATE EVIDENCE OF A SUDDEN QUARREL PROVOCATION

In 2011, we reaffirmed our 1989 holding in *State v. Pettit*[8] that a sudden quarrel manslaughter is an intentional homicide that does not negate the actor's intent to kill.[9] We overruled our contrary holding in *Jones* that manslaughter is an unintentional homicide[10] and reaffirmed *Pettit*'s holding that an adequate provocation is an extenuating circumstance that mitigates the defendant's culpability—but not one that justifies or excuses a killing.

Because our 2011 holding reaffirmed that the only distinction between second degree murder and voluntary manslaughter is a legal provocation, we held that the court's step instruction was incorrect. As the majority recognizes, we held that the instruction incorrectly "required the jury to convict on second degree murder if it found that [the defendant] killed [the victim] intentionally, but it did not permit the jury to consider the alternative possibility that the killing was intentional but provoked by a sudden quarrel, and therefore constituted manslaughter."[11] We held that a trial court must give an instruction under § 29-2027 if any evidence exists upon which a jury could believe that the defendant committed manslaughter and not murder. Section 29-2027, in relevant part, provides that "[i]n all trials for murder the jur[ors,] if they find the prisoner guilty thereof, shall ascertain in their

---

[8] *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989).

[9] See *Smith, supra* note 4.

[10] *Jones, supra* note 4.

[11] *Smith, supra* note 4, 282 Neb. at 734, 806 N.W.2d at 394.

verdict whether it is murder in the first or second degree or manslaughter."

In 2012, we clarified in *State v. Smith*[12] that in nonhomicide cases, a trial court does not have a duty to instruct on a lesser-included offense unless the defendant requests the instruction. But we also stated that in murder prosecutions, § 29-2027 is "a mandatory rule that [requires a court] to instruct the jury on all lesser degrees of criminal homicide for which there is proper evidence before the jury, whether requested to do so or not."[13]

Moreover, in *Smith*, we emphasized that voluntary manslaughter is not a lesser-included offense of second degree murder under our elements test, because it is possible to commit second degree murder without committing voluntary manslaughter. Instead, a sudden quarrel provocation is an extenuating circumstance that lessens *the degree* of homicide to manslaughter. We held that under § 29-2027, "where there is evidence that [a defendant killed intentionally and was acting under a provocation], a jury must be given the option of convicting [the defendant] of either second degree murder or voluntary manslaughter depending upon its resolution of the fact issue regarding provocation."[14]

So, *Smith* directly conflicts with, and effectively abrogates, the reasoning in *Jones*[15] that under an acquittal-first step instruction, a jury considers whether a defendant is guilty of a sudden quarrel provocation before determining that he is guilty of murder. Under *Jones*, we presumed that a jury considered whether the defendant was guilty of manslaughter before finding his guilt of murder. If that were so, we would have had no reason to require an option instruction in *Smith*. Instead, in *Smith*, we implicitly recognized that an acquittal-first step

---

[12] *Smith, supra* note 1.

[13] *Id.* at 651, 822 N.W.2d at 414.

[14] *Id.* at 656, 822 N.W.2d at 417.

[15] *Jones, supra* note 4.

instruction precludes the jury from considering a provocation defense in determining a defendant's guilt of murder.

And the majority recognizes that we made this reasoning explicit in *State v. Trice*.[16] There, we specifically rejected the State's argument that the jury had implicitly rejected a voluntary manslaughter conviction under an acquittal-first step instruction by convicting the defendant of second degree murder. We concluded that "under the instructions given (and presumably followed), the jury never actually considered whether [the defendant] acted upon a sudden quarrel."[17]

The majority acknowledges our holdings in *Smith* and *Trice*. But it ignores the obvious implications for first degree murder prosecutions. The reasoning in *Smith* and *Trice* applies equally to an acquittal-first step instruction on first degree murder, second degree murder, and sudden quarrel manslaughter. That is, if a jury cannot consider whether a defendant's "'intent to kill was the result of a sudden quarrel'" in a step instruction on second degree murder and voluntary manslaughter,[18] a jury also cannot consider whether a defendant's intent to kill was the result of a sudden quarrel in a step instruction on all three degrees of homicide. As the instructions in this case illustrate, a jury must acquit the defendant of *two* murder charges before the step instruction permits it to even consider a sudden quarrel provocation. Whether the charged crime is first degree murder or second degree murder, the mitigating circumstance exists only as an element of the lesser degree manslaughter offense.

Moreover, just as voluntary manslaughter is not a lesser-included offense of second degree murder under our elements test, it is not a lesser-included offense of first degree murder. One can commit a deliberate and premeditated murder without killing under a sudden quarrel provocation. Because

---

[16] *Trice, supra* note 3.

[17] *Id*. at 192, 835 N.W.2d at 674.

[18] See *id.* at 189, 835 N.W.2d at 672.

it is a *lesser degree* offense, our reasoning in *Smith* should also apply here. It applies because whether the charge is first degree murder or second degree murder, the emotional disturbance caused by an adequate provocation is an additional consideration outside of the elements of the murder charge that results in a less culpable state of mind. The provocation reduces the degree of homicide to manslaughter despite the actor's intent to kill.

Because an acquittal-first step instruction precludes the jury from considering a sudden quarrel provocation when determining guilt of first degree murder, *Smith* requires a trial court to instruct the jury in a manner that explains its options under § 29-2027: i.e., whether to convict the defendant of first degree murder, second degree murder, or manslaughter. As I explain more fully later, that mandate should minimally require two jury instructions in a first degree murder case: (1) an instruction that jurors must consider evidence of a sudden quarrel provocation when determining whether the State has proved the elements of first degree murder; and (2) an instruction that they cannot convict the defendant of first degree murder if they find that evidence of a sudden quarrel provocation creates a reasonable doubt about the defendant's guilt of murder. Without such instructions, the jurors cannot exercise their option to convict the defendant of voluntary manslaughter, as § 29-2027 requires.

I believe the majority incorrectly concludes that in the instruction on first degree murder, the jury necessarily finds beyond a reasonable doubt that the defendant did not kill while provoked by a sudden quarrel. It reasons as follows: For first degree murder, the State must prove that the defendant acted with deliberate and premeditated malice. The definitions of the deliberate and premeditated elements require a jury to find that the defendant formed an intent to kill before acting and that the defendant did not act rashly or suddenly. In contrast, a sudden quarrel provocation means that a defendant acted rashly and from passion, without due deliberation and reflection.

Thus, in finding beyond a reasonable doubt that Hinrichsen acted with deliberate and premeditated malice, the jury necessarily simultaneously found beyond a reasonable doubt that there was no sudden quarrel provocation, i.e., that he did not act without due deliberation and reflection. It is logically impossible to both deliberate and not deliberate at the same time.

Applying this reasoning, the majority concludes that our 2011 decision in *Smith* is distinguishable because here, the provocation defense was necessarily presented to the jury:

The key distinction is that in *Smith*, the jury was prevented from considering the crucial issue—whether the killing, although intentional, was the result of a sudden quarrel. The existence of a sudden quarrel was an additional element the jury needed to consider, but the instruction prevented it from doing so.

Here, the existence of a sudden quarrel is not an additional element. Rather, it is the converse of the enumerated elements of first degree murder. To find Hinrichsen guilty of first degree murder, the jury had to be convinced that none of the evidence, whether offered by the State or by Hinrichsen, raised a reasonable doubt that Hinrichsen killed with deliberate and premeditated malice.

This reasoning is incorrect and contrary to our case law. I agree that it is logically impossible to deliberate and not deliberate. But under an acquittal-first step instruction, the court never informs the jury that murder and manslaughter are mutually exclusive homicides or that the jury can consider the sudden quarrel defense in considering whether the State has proved the elements of murder. The majority's assumption that the sudden quarrel defense is presented to the jury and that the jury understands the State has the burden to disprove the defense is nothing more than an implausible legal fiction.

First, nothing in the instructions informs the jury that the State has the burden to disprove a sudden quarrel defense.

Second, the jury does not consider the defense because a sudden quarrel provocation is obviously not an element of either first or second degree murder. It is an extenuating circumstance that exists outside of the elements of a murder charge. By holding in *Smith* that voluntary manslaughter is not a lesser-included offense murder, we implicitly recognized this relationship. And we have explicitly recognized the same in rejecting a due process challenge to step instructions on second degree murder and voluntary manslaughter:

> Under Nebraska law, second degree murder is defined as causing the death of another intentionally, but without premeditation. . . . The definition of manslaughter includes the intentional killing of another, without malice, upon a sudden quarrel. . . . In order to convict a person of second degree murder, the State is required to prove all three elements—the death, the intent to kill, and causation—beyond a reasonable doubt. None of the elements is presumed upon proof of the others, nor is any element presumed in the absence of proof by the defendant of the converse of that element. As in [the] New York [statutes that the U.S. Supreme Court considered in *Patterson v. New York*[19]], the fact that a homicide occurs "upon a sudden quarrel" *is an additional circumstance* which serves to mitigate an intentional killing.[20]

The same reasoning applies to first degree murder. To prove first degree murder, the State must show that a defendant killed another "'purposely and with deliberate and premeditated malice.'"[21] In 2013, we rejected an argument that an acquittal-first step instruction in a first degree murder

---

[19] *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977).

[20] *State v. Cave*, 240 Neb. 783, 789, 484 N.W.2d 458, 464 (1992) (emphasis supplied).

[21] *State v. Bauldwin*, 283 Neb. 678, 706, 811 N.W.2d 267, 290 (2012), quoting Neb. Rev. Stat. § 28-303 (Reissue 2008).

prosecution must include an element that requires the State to disprove a sudden quarrel defense because the "absence of a sudden quarrel is not an element of [first degree murder]."[22] So nothing in the elements of the first degree murder charge of an acquittal-first step instruction informs a jury that evidence of a sudden quarrel provocation rebuts the murder elements or that the State must prove the absence of a sudden quarrel. And an acquittal-first step instruction blocks a jury from considering a provocation defense in a lesser degree manslaughter instruction.

For each murder count, the instructions here informed the jury that it must convict Hinrichsen of first degree murder if it concluded that the State had proved the elements of that charge beyond a reasonable doubt. In effect, the instructions told the jurors to stop deliberating at this point. And if the jury acquitted Hinrichsen of first degree murder and found that the State had proved the elements of second degree murder, the instruction again threw up a roadblock to convict and cease deliberating.

The question is not whether a Philadelphia lawyer could see through these instructions and conclude that the jury could consider the provocation evidence in deciding a defendant's guilt of murder. The question is whether the jury instructions are constructed so that *the jury* would not consider a mitigating circumstance in a lesser degree manslaughter offense.[23] The acquittal-first step instruction created more than a risk that the jury would not consider Hinrichsen's sudden quarrel defense in determining his guilt of murder; it effectively instructed the jury not to do so.

In sum, the instructions themselves and our case law support a conclusion that the jury did not consider Hinrichsen's provocation defense when determining his guilt of first degree murder. So the majority's reasoning that the jury understood

[22] See *State v. Morgan*, 286 Neb. 556, 562, 837 N.W.2d 543, 549-50 (2013).

[23] See *Falconer v. Lane*, 905 F.2d 1129 (7th Cir. 1990).

the State had the burden to disprove Hinrichsen's provocation defense, and rejected it, boils down to this syllogism: The elements of first degree murder and voluntary manslaughter are mutually exclusive. Therefore, by finding that the State proved that Hinrichsen killed purposely and with deliberate and premeditated malice, the jury could not find that he was guilty of voluntary manslaughter. As I explain next, this reasoning only highlights the due process problem presented by an acquittal-first step instruction for first degree murder and voluntary manslaughter.

## DUE PROCESS REQUIRES THE STATE TO DISPROVE ANY AFFIRMATIVE DEFENSE THAT NEGATES AN ELEMENT OF THE CRIME

### First Degree Murder and Manslaughter are Mutually Exclusive Homicides

As the majority opinion shows, proof of a sudden quarrel manslaughter negates the deliberation element of first degree murder. Other courts agree.[24] As the majority states, "It is logically impossible to both deliberate and not deliberate at the same time." Other courts also recognize that a legal provocation negates the premeditation element,[25] and we have agreed that to be adequate, a provocation must negate the elements of murder: "It is not the provocation alone that reduces the grade of the crime, but, rather, the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements necessary to constitute murder are absent."[26] Even more fundamentally, the majority acknowledges that under our statutes, proof of manslaughter

---

[24] See, *People v. Jones*, 223 Cal. App. 4th 995, 167 Cal. Rptr. 3d 659 (2014); *Villella v. State*, 833 So. 2d 192 (Fla. App. 2002); *State v. Van Zante*, 26 Wash. App. 739, 614 P.2d 217 (1980).

[25] See *id.*

[26] *Smith, supra* note 1, 284 Neb. at 642, 822 N.W.2d at 408, citing *Smith, supra* note 4; *State v. Lyle*, 258 Neb. 263, 603 N.W.2d 24 (1999).

negates the malice element of first degree murder—because manslaughter is a homicide committed "without malice."[27]

As stated, a first degree murder charge requires the State to prove the defendant killed another person "purposely and with deliberate and premeditated *malice*."[28] The "malice" element requires the State to prove a defendant killed intentionally, without just cause or excuse.[29] This definition does not obviously exclude a voluntary manslaughter conviction because a sudden quarrel provocation is an extenuating circumstance that mitigates, *but does not justify or excuse*, a killing.[30]

But first degree murder is a homicide committed with malice. In contrast, a "person commits manslaughter if he or she kills another *without malice* . . . upon a sudden quarrel."[31] So regardless of how our definitions of "malice" and "without malice" have changed over the decades, the Legislature long ago determined that first degree murder and voluntary manslaughter are mutually exclusive homicides. A defendant cannot be guilty of murder if the defendant killed while provoked by a legal provocation. We have implicitly and explicitly recognized that proof of a sudden quarrel manslaughter negates the malice element of first degree murder.[32]

So obviously, in a first degree murder prosecution, the State will not prove the offense of voluntary manslaughter.[33] To do so would disprove the murder charge. Because it is the defendant, not that State, who presents this evidence, the Illinois Supreme Court held almost 30 years ago that it is grave (plain) error to instruct the jury in a murder prosecution that the State has the

---

[27] See Neb. Rev. Stat. § 28-305 (Supp. 2015).

[28] See § 28-303.

[29] *State v. Fox*, 286 Neb. 956, 840 N.W.2d 479 (2013).

[30] See *Smith, supra* note 4 (reaffirming *Pettit, supra* note 8).

[31] § 28-305(1); *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

[32] See, *Trice, supra* note 3; *Smith, supra* note 4; *Lyle, supra* note 26; *Pettit, supra* note 8.

[33] See *Lyle, supra* note 26.

burden to prove both murder and a manslaughter offense based on a mitigating mental state.[34] And we have specifically stated that in a first degree murder prosecution, "[i]t is a question for the trier of fact *whether the defendant . . .* has presented sufficient evidence of provocation to cast a reasonable doubt on the element of malice."[35]

Because the State has no incentive to prove a sudden quarrel manslaughter in a first degree murder prosecution and proof of such provocation precludes a first degree murder conviction, the defendant produces provocation evidence as a partial affirmative defense.[36] It does not justify or excuse the killing. But because it precludes a murder conviction and lessens the degree of homicide from murder to manslaughter,[37] a legal provocation operates as a *partial* excuse to a murder charge.[38] And because the defense rests on considerations outside the elements of the charged murder and negates a defendant's criminal liability for that crime even if the State could otherwise prove those elements, it is an affirmative defense.[39]

If a defendant produces evidence sufficient to raise an affirmative defense, our case law requires the State to disprove that theory beyond a reasonable doubt.[40] As discussed

---

[34] See *People v. Reddick*, 123 Ill. 2d 184, 526 N.E.2d 141, 122 Ill. Dec. 1 (1988).

[35] *Lyle, supra* note 26, 258 Neb. at 271-72, 603 N.W.2d at 31 (emphasis supplied).

[36] See *Cave, supra* note 20. Accord, *State v. Austin*, 244 Conn. 226, 710 A.2d 732 (1998); *People v. McVay*, 170 Ill. App. 3d 443, 524 N.E.2d 635, 120 Ill. Dec. 605 (1988).

[37] See *Smith, supra* note 1.

[38] See, e.g., Mitchell N. Berman & Ian P. Farrell, *Provocation Manslaughter as Partial Justification and Partial Excuse*, 52 Wm. & Mary L. Rev. 1027 (2011).

[39] See, e.g., *U.S. v. Davenport*, 519 F.3d 940 (9th Cir. 2008). Accord *Patterson, supra* note 19.

[40] See, *Burlison, supra* note 4; *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997); *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992).

next, when an affirmative defense negates an element of the charged crime, federal courts have interpreted the Due Process Clause to unquestionably demand that the State disprove the defense.

## U.S. Supreme Court Precedent on Due Process Requirements

In three seminal cases in the 1970's and 1980's, the U.S. Supreme Court considered whether the jury instructions in murder prosecutions violated due process requirements. In the first case, *Mullaney v. Wilbur*,[41] the Maine Supreme Court had interpreted its homicide statutes to mean that malice, as an element of murder, was presumed when the State proved a homicide was intentional and unlawful, unless the defendant proved by a preponderance of the evidence that he had killed under a sudden provocation. The trial court explained that malice aforethought and sudden provocation were inconsistent and that malice was presumed unless the defendant proved that he killed in the heat of passion—thereby negating malice aforethought. The U.S. Supreme Court held that this shifting of the burden of proof on the critical fact in dispute violated due process. By requiring the defendant to prove the critical fact in dispute, Maine's laws increased the likelihood of an erroneous murder conviction:

> Under this burden of proof a defendant can be given a life sentence when the evidence indicates that it is *as likely as not* that he deserves a significantly lesser sentence. This is an intolerable result . . . . We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.[42]

---

[41] *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

[42] *Id.*, 421 U.S. at 703-04 (emphasis in original).

But 2 years later, in *Patterson v. New York*,[43] the Court upheld the constitutionality of a New York statute that created an affirmative defense—extreme emotional distress—to a charge of second degree murder. If a defendant proved the defense by a preponderance of the evidence, the second degree murder charge was reduced to manslaughter. The only elements that the State was required to prove for murder were the death, the defendant's intent to kill, and causation.

The Court distinguished *Mullaney* as addressing laws that required the defendant to prove a fact that negated an element of the murder charge.

> [M]alice, in the sense of the absence of provocation, was part of the definition of that crime. Yet malice, *i.e.,* lack of provocation, was presumed and could be rebutted by the defendant only by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation.[44]

"Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause."[45] In contrast, New York's affirmative defense did not violate due process because it "*does not serve to negative any facts of the crime which the State is to prove in order to convict of murder*. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion . . . ."[46]

Finally, in *Martin v. Ohio*,[47] the defendant had the burden of proving by a preponderance of the evidence a self-defense claim that overlapped and could tend to negate a component of the murder charge that required the State to prove the

---

[43] *Patterson, supra* note 19.

[44] *Id.*, 432 U.S. at 216.

[45] *Id.*, 432 U.S. at 215.

[46] *Id.*, 432 U.S. at 207 (emphasis supplied).

[47] *Martin v. Ohio*, 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987).

defendant killed with prior calculation and design. The majority concluded that the instructions did not unconstitutionally shift the burden to the defendant to disprove an element of the murder charge *because the trial court instructed the jury to consider the defense in determining guilt*:

> To find guilt, the jury had to be convinced that none of the evidence, whether offered by the State or by [the defendant] in connection with her plea of self-defense, raised a reasonable doubt that [the defendant] had killed her husband, that she had the specific purpose and intent to cause his death, or that she had done so with prior calculation and design. *It was also told, however, that it could acquit if* it found by a preponderance of the evidence that [the defendant] had not precipitated the confrontation, that she had an honest belief that she was in imminent danger of death or great bodily harm, and that she had satisfied any duty to retreat or avoid danger. . . .
>
> . . . .
>
> *It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case*, *i.e.,* that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. *Such an instruction would relieve the State of its burden and plainly run afoul of* Winship*'s mandate.* . . . The instructions in this case could be clearer in this respect, but when read as a whole, we think they are *adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime*.[48]

Justice Powell, writing for the four dissenting justices, concluded *Patterson* shows that the Due Process Clause prohibits

---

[48] *Id.*, 480 U.S. at 233-34 (emphasis supplied), citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

shifting the burden to a defendant to prove a defense that negates an element of the crime and that the instructions in *Martin* created an unacceptable risk the jury would lower the State's burden of proof:

> The Court found that this burden shifting [in *Patterson*] did not violate due process, largely because the affirmative defense did "not serve to negative any facts of the crime which the State is to prove in order to convict of murder." . . . *The clear implication of this ruling is that when an affirmative defense does negate an element of the crime, the state may not shift the burden.* . . .
>
> The reason for treating a defense that negates an element of the crime differently from other affirmative defenses is plain. If the jury is told that the prosecution has the burden of proving all the elements of a crime, but then also is instructed that the defendant has the burden of *dis*proving one of those same elements, there is a danger that the jurors will resolve the inconsistency in a way that lessens the presumption of innocence. For example, the jury might reasonably believe that by raising the defense, the accused has assumed the ultimate burden of proving that particular element. Or, it might reconcile the instructions simply by balancing the evidence that supports the prosecutor's case against the evidence supporting the affirmative defense, and conclude that the state has satisfied its burden if the prosecution's version is more persuasive. In either case, the jury is given the unmistakable but erroneous impression that the defendant shares the risk of nonpersuasion as to a fact necessary for conviction.[49]

The import of *Martin* is that due process does not require the State to disprove an affirmative defense to a murder charge that does not necessarily negate an element of the crime, even if some facts that prove the defense would, if

---

[49] *Id.*, 480 U.S. at 237-38 (emphasis supplied) (Powell, J., dissenting; Brennan, Marshall, and Blackmun, JJ., join).

believed, *tend to* negate an element of the murder charge. But in that circumstance, due process does prohibit the State from precluding the jury's consideration of a defense that overlaps an essential element when determining guilt, because the evidence could create a reasonable doubt regarding the proof of that element.

More recently, the Court put to rest any argument that *Patterson* had limited *Mullaney*'s holding to only those jury instructions that presume an element of a murder charge. In *Smith v. U.S.*,[50] the Court adopted Justice Powell's statement in his *Martin* dissent that under *Patterson*, states may not shift the burden to the defendant on an affirmative defense that negates an element of the crime. In *Smith*,[51] the Court relied on that statement to explain when the government cannot constitutionally put the burden of persuasion on a defendant to prove an affirmative defense:

> Allocating to a defendant the burden of proving withdrawal [from a drug conspiracy] does not violate the Due Process Clause. While the Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged,"[52] . . . "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required[.]"[53] *The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense does negate an element of the crime."*[54] . . . Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has

---

[50] *Smith v. U.S.*, ___ U.S. ___, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013) (emphasis in original).

[51] *Id.*, 133 S. Ct. at 719.

[52] *In re Winship, supra* note 48, 397 U.S. at 364.

[53] *Patterson, supra* note 19, 432 U.S. at 210.

[54] *Martin, supra* note 47, 480 U.S. at 237 (Powell, J., dissenting).

no constitutional duty to overcome the defense beyond a reasonable doubt.[55]

Our acquittal-first step instruction does not comply with the Court's clear statement that states cannot shift the burden of proof to a defendant on an affirmative defense that negates an element of the crime. As previously explained, in Nebraska, proof of a sudden quarrel provocation negates the deliberate, premeditated, and malice elements of first degree murder. Conversely, malice is a mens rea that does not exist if the defendant killed as the result of a sudden quarrel provocation. Yet, evidence of a sudden quarrel provocation will only be produced by a defendant in a murder prosecution because proving that the defendant killed under a provocation negates the level of culpability required for murder.

So the due process question is which party should bear the burden of persuasion to prove or disprove an affirmative defense that, if believed, negates elements of the charged crime. Under *Smith v. U.S.*, it cannot be the defendant. Lower federal courts had previously agreed that *Mullaney* precludes shifting the burden of persuasion to a defendant on such defenses.

## FEDERAL COURTS OF APPEALS' DECISIONS

Nebraska's homicide statutes are similar to the federal government's homicide statutes. Like Nebraska's manslaughter statute, the federal manslaughter statute requires proof that the defendant acted "without malice" and voluntary manslaughter is unlawful killing upon a sudden quarrel or heat of passion.[56] But the federal murder statute defines both first degree and second degree murder to include "malice aforethought" as an element.[57] Even before the U.S. Supreme Court issued *Smith v. U.S.* in 2013, federal appellate courts had applied *Mullaney*

---

[55] *Dixon v. United States*, 548 U.S. 1, 6, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006).

[56] See 18 U.S.C. § 1112(a) (2012).

[57] See 18 U.S.C. § 1111(a) (2012).

to invalidate jury instructions that placed the burden of persuasion on a defendant to prove a provocation that does nothing more than rebut the malice element of murder.

For example, in *United States v. Lofton*,[58] the Tenth Circuit held that in a federal murder prosecution with a heat of passion defense, *Mullaney* required the trial court to put the defendant's theory squarely before the jury and inform the jury that the government had the burden to show its absence. The court concluded that *Patterson* did not apply because under New York law, malice was not an element of the second degree murder charge. In contrast, malice was an element of murder under federal law, and a heat of passion defense directly negated malice. But in *Lofton*, the only part of the step instruction that informed the jury of the heat of passion defense was the manslaughter instruction. The requirement that a court instruct the jury on the government's burden to disprove the heat of passion defense was not satisfied by the instruction that the government was required to prove heat of passion to secure a manslaughter conviction.

In *Lofton*, the Tenth Circuit explicitly rejected the government's argument that "the court implicitly defined malice and heat of passion as mutually exclusive and that the structure of the charge forced the jury to find the presence of malice, and thus the absence of heat of passion, in order to find murder":

> [T]he charge did not specifically distinguish the two as inconsistent mental states or inform the jury that finding one necessarily precluded finding the other. Moreover, while the court distinguished first-degree from second-degree murder on the basis of premeditation, it did not differentiate second-degree murder from manslaughter on the basis of the distinction between malice and heat of passion.
>
> Indeed, the very structure of the charge precluded the jury from considering the effect of [the] heat of passion

---

[58] *United States v. Lofton*, 776 F.2d 918 (10th Cir. 1985).

defense on the murder count. Instruction 13 advised the jury that if it found the defendant not guilty of first-degree murder, it must then consider if she was guilty of second-degree murder; if it found that she was not guilty of second-degree murder, it must then determine if she was guilty of manslaughter. . . . Thus, the jury was instructed to consider manslaughter only if it found [the defendant] not guilty of murder. The verdict form followed this same format. Although the charge instructed the jury at least seven times of the Government's burden of proof beyond a reasonable doubt of each element of the crime, and notwithstanding the direction that the instructions must be considered as a whole, this was insufficient to inform the jury that the Government must prove the absence of heat of passion beyond a reasonable doubt. A clear and unambiguous instruction to this effect is the constitutional minimum required by *Mullaney*.[59]

Two years later, the Ninth Circuit agreed with the Tenth Circuit, reasoning: "We construe *Mullaney* to require jury instructions for murder to state that the government bears the burden of proving beyond a reasonable doubt the absence of heat of passion or sudden quarrel where that defense is raised."[60]

The Fifth Circuit, however, initially disagreed with the Ninth and Tenth Circuits. In *U.S. v. Molina-Uribe*,[61] the court acknowledged that the "part of *Mullaney* which survives *Patterson* [is] the rule that a State may not place upon the defendant the burden of persuasion on an issue that, if established, would necessarily negate an element of

---

[59] *Id.* at 921, 922. Accord *U.S. v. Visinaiz*, 428 F.3d 1300 (10th Cir. 2005).

[60] *U.S. v. Lesina*, 833 F.2d 156, 160 (9th Cir. 1987). Accord *U.S. v. Bushyhead*, 270 F.3d 905 (9th Cir. 2001). See, also, *United States v. Jackson*, 368 F.3d 59 (2d Cir. 2004); 2A Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 45:03, notes (6th ed. 2009 & Supp. 2015); 2 Leonard B. Sand et al., Modern Federal Jury Instructions, No. 41-4 (2005).

[61] *U.S. v. Molina-Uribe*, 853 F.2d 1193 (5th Cir. 1988), *overruled on other grounds, U.S. v. Bachynsky*, 934 F.2d 1349 (5th Cir. 1991).

the crime."[62] But like this court in *State v. Morgan*,[63] the Fifth Circuit stated that the instructions did not define malice aforethought in terms of an absence of heat of passion. It concluded that the instructions did not violate *Mullaney* because "malice is neither presumed nor required to be disproved by the defendant."[64] It further reasoned that because the government had the burden of proving heat of passion, (presumably, in a lesser-included instruction for manslaughter), no burden was placed on the defendant to prove that the murder was committed in the heat of passion. Finally, it reasoned that in determining whether the victim was killed with premeditation and malice aforethought, the jury was instructed to "'consider all the facts and circumstances preceding, surrounding and following the killing . . . which tend to shed light upon the condition of the mind and heart of the accused before and at the time of the deed.'"[65]

The Fifth Circuit has not overruled its holding in *Molina-Uribe*. But the year after it issued this opinion, it reached the opposite conclusion in *U.S. v. Browner*.[66] There, the court acknowledged that a heat of passion defense negates the malice element in the federal homicide statute and that this relationship requires the government to disprove an adequately raised provocation:

> [T]he federal statute simply declares the language of the common-law offense, and so when the defendant, without legal justification but actuated by a [heat of passion] kills intentionally (or with one of the other mental states that constitutes malice), the killing is nevertheless deemed to be in the *absence of malice* under the federal statute. . . .

---

[62] *Id.* at 1204 n.33, quoting *Holloway v. McElroy*, 632 F.2d 605 (5th Cir. 1980).

[63] *Morgan, supra* note 22.

[64] *Molina-Uribe, supra* note 61, 853 F.2d at 1204.

[65] *Id.* at 1205.

[66] *U.S. v. Browner*, 889 F.2d 549 (5th Cir. 1989).

The malice that would otherwise attach is *negated* by the fact that the intentional killing occurred in the heat of passion in response to a sufficient provocation. . . . Since malice is an element of murder, no murder can occur when a sufficient provocation induces the requisite heat of passion. Thus, the malice element of the traditional offense of murder implicitly forces prosecutors to *disprove* the existence of adequate provocation when the evidence suggests that it may be present.[67]

The Sixth Circuit has applied the same reasoning to state court jury instructions. It held that regardless of whether a state court has characterized a manslaughter statute as an affirmative defense, the constitutional inquiry is whether a mitigating circumstance in the manslaughter statute, like a sudden passion, negates an element of the murder charge. It reasoned that under *Mullaney*, a state may not constitutionally require a defendant to negate an element of the charged crime, even if this proof is designated an affirmative defense.[68]

It is true that in federal habeas actions, the Ninth and Tenth Circuits have been lenient in reviewing challenges to state court jury instructions. But in those cases, the courts' reviews were limited by the federal habeas statute or the jury instructions under review at least required the jury to consider the provocation defense in determining guilt of murder.

For example, the Ninth Circuit rejected a challenge to a Nevada state court's murder and manslaughter step instruction that specifically defined malice "'as used in the definition of Murder, [to mean] the intentional doing of a wrongful act *without legal cause or excuse or what the law considers adequate provocation*.'"[69] "Thus, to find [the defendant] guilty of first

---

[67] *Id.* at 552 (emphasis in original). Accord *Lizama v. U.S. Parole Com'n*, 245 F.3d 503 (5th Cir. 2001).

[68] See *Rhodes v. Brigano*, 91 F.3d 803 (6th Cir. 1996).

[69] *Dunckhurst v. Deeds*, 859 F.2d 110, 112 (9th Cir. 1988) (emphasis in original).

degree murder, the jury necessarily had to find that the State proved beyond a reasonable doubt that [he] killed [the victim] with malice aforethought, i.e., without adequate provocation."[70] Notably, while the Ninth Circuit concluded that this definition of malice was sufficient to convey the prosecution's burden of proof, the Nevada Supreme Court has since explicitly held that the State has the burden to prove a defendant did not act in the heat of passion.[71]

The Tenth Circuit similarly upheld an Oklahoma state court's jury instruction that did not require the state to prove the absence of heat of passion, which evidence was produced as an affirmative defense. But the instructions did inform the jurors that "'[m]alice and heat of passion cannot co-exist'" and that they should consider all the circumstances in determining whether the defendant had acted with malice or in the heat of passion.[72] The court noted the instruction was given only because it was a lesser-included offense, not because the defendant had squarely raised the defense. In that circumstance, the instructions were adequate.

In 2006, in *Bland v. Sirmons*,[73] the Tenth Circuit rejected another federal habeas challenge to Oklahoma's jury instructions, despite concluding that the claim was procedurally barred. As in the earlier case, the jury instructions did not require the prosecution to prove that the defendant did not act in the heat of passion. In dicta, the court stated that *Patterson* had limited *Mullaney* "to situations where a fact is presumed or implied against a defendant."[74] The court nonetheless acknowledged that if its decision "in *Lofton* were controlling, [the

---

[70] *Id.* at 113.

[71] See *Crawford v. State*, 121 Nev. 744, 121 P.3d 582 (2005).

[72] See *Davis v. Maynard*, 869 F.2d 1401, 1405 (10th Cir. 1989), *vacated on other grounds, Saffle v. Davis*, 494 U.S. 1050, 110 S. Ct. 1516, 108 L. Ed. 2d 756 (1990).

[73] *Bland v. Sirmons*, 459 F.3d 999, 1014 (10th Cir. 2006).

[74] *Id.* at 1013.

petitioner] might well be entitled to relief."[75] But it explained that *Lofton* could not support a habeas challenge to the instructions under the federal Antiterrorism and Effective Death Penalty Act of 1996.

Congress had passed that act a decade before the Tenth Circuit decided *Bland*. Since its enactment, a federal court cannot grant habeas relief unless a state court decision "'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.'"[76] The "decisions of lower federal courts applying Supreme Court precedent are not determinative."[77] The Tenth Circuit concluded that because the Fifth Circuit had disagreed with its decision in *Lofton*, "the lower federal courts have in fact divided as to the proper scope of *Mullaney* after *Patterson*."[78] It concluded that the state court ruling upholding the instruction was not an unreasonable application of "*Mullaney*, as the Supreme Court construed that rule in *Patterson*."[79]

As explained, however, in 2013, the U.S. Supreme Court clarified the reach of *Mullaney*. Under *Smith v. U.S.*, the State is foreclosed from shifting the burden of proof to a defendant on an affirmative defense that negates an element of the crime.[80] *Smith* was a unanimous decision, and its explanation of due process requirements shows that *Patterson* did not limit *Mullaney* "to situations where a fact is presumed or implied against a defendant."[81] Under *Smith*, *Mullaney*'s central tenet still applies: It is intolerable for the defendant to bear the risk

---

[75] *Id.* at 1014.

[76] *Id.* (emphasis in original), citing 28 U.S.C. § 2254(d)(1) (2012).

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] See *Smith, supra* note 50 and text quoted at note 51.

[81] *Bland, supra* note 73, 459 F.3d at 1013.

of error on the critical fact in dispute distinguishing murder from manslaughter.

Moreover, in 2013, the Seventh Circuit specifically relied on *Smith v. U.S.* to explain why the government has the burden to disprove an adequate provocation claim in a federal murder prosecution.[82] In that decision, the court stated that a provocation defense is like an entrapment defense because, if believed, it negates a defendant's culpability. So a provocation defense simply "puts the government to its proof" and requires it to prove the defendant did not kill in the heat of passion.[83] Citing *Smith*, the court explained that a provocation defense is unlike an affirmative defense that does not have a mutually exclusive relationship with an element of the crime: "To prove that a defendant has killed in the heat of passion is unlike proof that the statute of limitations has run, because proof that prosecution is time-barred does not negate any element of the crime."[84]

The Seventh Circuit's decision illustrates that since the U.S. Supreme Court issued *Smith v. U.S.*, there is clearly established federal precedent by the Supreme Court on the due process requirement that the prosecution disprove an affirmative defense that negates an element of the charged offense.

Of course, the due process requirement stated in *Smith v. U.S.* applies only if an affirmative defense negates an element of the charged crime. So the majority, by acknowledging that *Smith* applies here, agrees that a sudden quarrel provocation is an affirmative defense that the State must disprove because it negates elements of the first degree murder charge. But it dodges *Smith*'s requirements. Instead, it relies on precedent that is outdated or misconstrued to conclude that the jury understood the State had the burden to prove Hinrichsen did not kill as the result of a sudden provocation and that the

---

[82] See *U.S. v. Delaney*, 717 F.3d 553 (7th Cir. 2013).

[83] *Id.* at 559.

[84] *Id.*, citing *Smith, supra* note 50.

State met its burden. And its prescribed placebo for future first degree murder prosecutions will not cure the due process problem nor bring the instruction in compliance with our decision in *State v. Smith*.[85]

## MAJORITY'S SUGGESTED INSTRUCTION IS INADEQUATE

Despite concluding that the acquittal-first step instruction for first degree murder complies with the due process requirements, the majority suggests the following instruction for future cases:

> In future cases, . . . it would be a better practice for courts, in first degree murder cases in which evidence of provocation has been adduced by the defendant, to clarify the definition of deliberation. We encourage courts in such cases to define "deliberate" to mean "not suddenly or rashly, but doing an act after first considering the probable consequences. An act is not deliberate if it is the result of sudden quarrel provocation."

But why should such an instruction be necessary if under our current instructions, jurors already consider sudden quarrel evidence and conclude that the State disproved the defense when they convict a defendant of first degree murder? If jurors actually understood that the deliberation element and a provocation defense are mutually exclusive and that by proving the deliberation element, the State necessarily disproves a provocation defense, there should be no need to inform them that an act is not deliberate if it is the result of a sudden quarrel provocation. So the majority's suggestion that in the future, courts give a mutually exclusive instruction in the definition of deliberation is an implicit acknowledgment that a jury currently (1) does not consider sudden quarrel evidence in determining a defendant's guilt of first degree murder and (2) does not understand that by proving the deliberation element, the State disproves a provocation defense.

---

[85] *Smith, supra* note 1.

Of course, having jurors in the future consider evidence of a sudden quarrel in deciding whether a defendant deliberated a homicide is an improvement over our current instructions. And if the majority were requiring courts in the future to consider evidence of the provocation defense in deciding guilt of murder, that instruction would partially bring our instruction in compliance with *Martin v. Ohio*.[86] As explained, under that case, a State cannot preclude a jury from considering evidence of an affirmative defense that overlaps and tends to negate an element of the charged crime.

But only instructing a jury that an act is not deliberate if it is the result of a sudden quarrel provocation would give jurors the impression that a provocation defense is irrelevant to the elements of premeditation and malice. And proof of a sudden quarrel provocation also negates the elements of premeditation and malice. So I believe a better option under § 29-2027 is to instruct the jury that (1) the jury must consider evidence of a sudden quarrel provocation in deciding whether the State has proved the elements of first degree murder; and (2) it cannot convict a defendant of murder if it finds that evidence of a sudden quarrel provocation creates a reasonable doubt about the defendant's guilt. This instruction would better explain a jury's options under § 29-2027, as *State v. Smith* requires.

But even if the suggested instruction were adequate, the majority knows well that suggested instructions are toothless, as our 2009 decision in *State v. Goodwin*[87] illustrated. There, we found no constitutional infirmity or error in the acquittal-first step instruction in a first degree murder case. Nonetheless, we encouraged courts in future cases to give an instruction under NJI2d Crim. 3.1, which we described as providing a clearer and more concise explanation of the process by which the jury is to consider lesser-included offenses. But in 2012,

---

[86] See *Martin, supra* note 47.

[87] *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009).

an appeal arose in which the court did not give the instruction. We affirmed because we had held in *Goodwin* that the step instruction was constitutional.[88]

Additionally, nothing in our current step instruction or the suggested instruction for first degree murder complies with the mandate in *State v. Smith*: i.e., "a jury must be given the option of convicting [the defendant] of either second degree murder or voluntary manslaughter depending upon its resolution of the fact issue regarding provocation."[89]

But the more important point is that the majority's legal fiction is false. The acquittal-first step instruction blocks the jury's consideration of the provocation defense, and the instructions do not explain the defense's mutually exclusive relationship with the murder elements. Moreover, even if the jury were instructed to consider the mutually exclusive relationship between a provocation defense and each element of murder negated by that defense, this correction would not resolve the burden of proof problem. And the cases relied on by the majority do not support its conclusion that a court is not required to instruct a jury that the State has the burden to disprove a sudden quarrel provocation.

## CASES CITED BY THE MAJORITY
## DO NOT SUPPORT ITS HOLDING

### Federal Court Decisions

As stated, the majority recognizes that *Smith v. U.S.* applies here because it prohibits states from shifting the burden of proof to the defendant for an affirmative defense that negates an element of the crime. Nonetheless, the majority erroneously relies on the following statement in *Patterson* to conclude that "due process is met as long as the state has to prove beyond a reasonable doubt all of those enumerated elements" of first degree murder:

---

[88] See *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012).

[89] *Smith, supra* note 1, 284 Neb. at 656, 822 N.W.2d at 417.

Traditionally, due process has required that only the most
basic procedural safeguards be observed; more subtle bal-
ancing of society's interests against those of the accused
ha[s] been left to the legislative branch. We therefore will
not disturb the balance struck in previous cases hold-
ing that the Due Process Clause requires the prosecu-
tion to prove beyond a reasonable doubt all of the ele-
ments included in the definition of the offense of which
the defendant is charged. Proof of the nonexistence of
all affirmative defenses has never been constitutionally
required; and we perceive no reason to fashion such a
rule in this case and apply it to the statutory defense at
issue here.[90]

Taken out of context, this statement appears to support
the majority's conclusion. But the only reason that the U.S.
Supreme Court saw no reason to require New York to prove
a defendant did not kill as the result of an extreme emo-
tional distress was because it had already determined that
this affirmative defense "d[id] not serve to negative any facts
of the crime which the State is to prove in order to convict
of murder."[91]

But the same is not true here. Unlike the affirmative defense
in *Patterson*, this court has acknowledged that an adequate
provocation must negate three elements of first degree murder:
premeditation, deliberation, and malice. Moreover, in distin-
guishing *Mullaney*, the Court in *Patterson* specifically stated
that shifting "the burden of persuasion with respect to a fact
which the State deems so important that it must be *either*
proved *or* presumed is impermissible under the Due Process
Clause."[92] It may have been reasonable before *Smith v. U.S.*[93]
to interpret *Patterson* as nonetheless limiting *Mullaney* to

---

[90] *Patterson, supra* note 19, 432 U.S. at 210.

[91] *Id.*, 432 U.S. at 207.

[92] *Id.*, 432 U.S. at 215 (emphasis supplied).

[93] *Smith, supra* note 50.

those laws that presumed the element of malice upon proof of an intentional and unlawful homicide. But the Court's decision in *Smith* refutes that interpretation of *Patterson*. There, the Court adopted Justice Powell's interpretation of *Patterson*: "The clear implication of this ruling [in *Patterson*] is that when an affirmative defense *does* negate an element of the crime, the state may not shift the burden."[94] So the majority incorrectly reduces *Patterson* to requiring only that the State prove the elements of the charged crime beyond a reasonable doubt. And its acknowledgment that the Supreme Court's decision in *Smith v. U.S.* applies here directly conflicts with its reliance on its incorrect interpretation of *Patterson*.

The majority similarly takes false comfort in the Ninth Circuit's decision upholding a Utah state court's jury instructions on murder and provocation. It misconstrues the holding by failing to mention the significant fact that the Utah instruction at least defined malice to mean "'the intentional doing of a wrongful act *without legal cause or excuse or what the law considers adequate provocation*.'"[95] As previously stated, the Ninth Circuit concluded that this instruction required the jury to find that the defendant did not kill because of a sudden provocation in order to find him guilty of first degree murder. Leaving aside whether this instruction would be adequate under *Smith v. U.S.*, our jury instruction does not define "malice" to exclude a sudden quarrel provocation. Nothing in the court's acquittal-first step instruction allowed the jury to consider Hinrichsen's provocation defense in determining his guilt of first degree murder. So unlike Utah's jury instruction, the acquittal-first step instruction here violated both *Martin v. Ohio*[96] and *Mullaney v. Wilbur*.[97]

---

[94] *Martin, supra* note 47, 480 U.S. at 237 (emphasis in original) (Powell, J., dissenting), quoted in *Smith, supra* note 50.

[95] See *Dunckhurst, supra* note 69, 859 F.2d at 112 (emphasis in original).

[96] *Martin, supra* note 47.

[97] *Mullaney, supra* note 41.

Similarly, the Fifth Circuit's decision in *Molina-Uribe*[98] is a thin reed for the majority to hold onto in a constitutional analysis. As explained, a year after it held that the government need not prove the absence of a heat of passion, it specifically recognized that because a heat of passion defense negates the malice element in the federal homicide statute, the government must prove the defendant did not kill in the heat of passion when the defense is raised.[99] Additionally, an integral part of the Fifth Circuit's reasoning was that in determining whether the victim was killed with premeditation and malice aforethought, the jury was instructed to "'consider all the facts and circumstances preceding, surrounding and following the killing . . . which tend to shed light upon the condition of the mind and heart of the accused before and at the time of the deed.'"[100] That instruction is not given in Nebraska. So the Fifth Circuit's decision fails to validate our acquittal-first step instruction.

The majority also erroneously relies on the Fourth Circuit's decision in *Guthrie v. Warden, Maryland Penitentiary*.[101] There, malice, as an element of second degree murder, was presumed when the State proved the defendant killed willfully and intentionally, and without legal excuse or justification, unless the defendant proved that he killed because of a sudden provocation. The Fourth Circuit held that these instructions were a clear violation of *Mullaney*. But because the defendant was convicted of first degree murder, it held that the violation was harmless error: i.e., by proving the murder was deliberate and premeditated, the State had necessarily "'disproved manslaughter beyond a reasonable doubt.'"[102] The court reasoned that the defendant's heat of passion defense

---

[98] *Molina-Uribe, supra* note 61.

[99] See *Browner, supra* note 66.

[100] *Molina-Uribe, supra* note 61, 853 F.2d at 1205.

[101] *Guthrie v. Warden, Maryland Penitentiary*, 683 F.2d 820 (4th Cir. 1982).

[102] *Id.* at 823.

was relevant only to the distinction between manslaughter and second degree murder and did not "touch on" the elements of first degree murder.[103]

But this harmless error analysis does not support the majority's conclusion that our acquittal-first step instruction complies with due process requirements. The Fourth Circuit held that the instruction was error. And however questionable its reasoning was in determining that the error was harmless, the Fourth Circuit reasoned that the provocation defense did not negate any element of the first degree murder charge. But this court has acknowledged that in Nebraska, proof of a sudden quarrel provocation negates three elements of first degree murder. And the majority explicitly acknowledges here that a provocation defense negates the elements of malice and deliberation.

More important, the Fifth Circuit's reasoning in *Molina-Uribe* and the Fourth Circuit's reasoning in *Guthrie* have been effectively abrogated by *Smith v. U.S.* Both courts explicitly or implicitly reasoned that the government's proof of the murder elements negated the provocation defense. It is true that a malice element in a murder charge and a provocation defense under a manslaughter statute have a mutually exclusive relationship. They cannot both exist. But by foreclosing states from shifting the burden of proof to the defendant "'when an affirmative defense *does* negate an element of the crime,'"[104] the Supreme Court clearly meant that for such defenses, the prosecution must "overcome the defense beyond a reasonable doubt."[105] *In re Winship*[106] has required states to prove the elements of a crime beyond a reasonable doubt since 1970. And the principle that states may not shift the burden to the defendant to prove an affirmative

---

[103] See *id.*

[104] *Smith, supra* note 50, 133 S. Ct. at 719 (emphasis in original).

[105] See *id.*

[106] *In re Winship, supra* note 48.

defense that negates an element of the crime is an extension of *In re Winship*—not synonymous with it. The Court clearly meant that a state must disprove any additional consideration in an affirmative defense that negates an element of the charged crime.

The majority avoids this requirement by engaging in a formalistic interpretation of the Court's mandate that states cannot shift the burden of proof. It reasons that our jury instruction complies with due process because it does not specifically instruct the jury that the defendant has the burden to disprove any element of the murder charge. But just because our jury instruction does not explicitly inform the jury that the defendant bears this burden does not make it constitutional. The defendant, not the State, produces the provocation evidence, and a provocation is a circumstance that exists outside of the listed elements that the State must prove. As noted, this court has stated that "[i]t is a question for the trier of fact *whether the defendant . . .* has presented sufficient evidence of provocation to cast a reasonable doubt on the element of malice."[107] And like this court, a jury will reasonably conclude that the defendant has the burden to negate the elements of first degree murder unless it is specifically informed that the State has the burden to disprove the defense.

Contrary to the majority's reasoning, it is *because* the elements and affirmative defense have a mutually exclusive relationship that the State must disprove a provocation defense. Without this burden of proof instruction, there is a danger that the jurors will resolve the inconsistency in a way that lessens the presumption of innocence.[108] That is, even when a jury is expressly allowed to consider any evidence of a sudden provocation, a jury could determine that a defendant had

---

[107] *Lyle, supra* note 26, 258 Neb. at 271-72, 603 N.W.2d at 31 (emphasis supplied).

[108] See *Martin, supra* note 47 (Powell, J., dissenting).

failed to negate the elements of malice, deliberation, and premeditation, instead of determining that the State proved them beyond a reasonable doubt.

This is the reasoning that the U.S. Supreme Court implicitly agreed with in *Smith v. U.S.* when it adopted Justice Powell's statement that a state must disprove a defense that negates an element of the crime. I cannot reconcile the *Smith* Court's reasoning with the majority's conclusion that our instruction complies with due process because proof of the murder elements necessarily negates a sudden quarrel defense.

### STATE COURTS CITED BY THE MAJORITY REQUIRE THE STATE TO DISPROVE A PROVOCATION DEFENSE

State court decisions, of course, are not determinative of what the federal Due Process Clause requires when they conflict with the U.S. Supreme Court's precedent. I discuss these cases only to demonstrate that the majority's purported support is not support at all. To the contrary, the jury instructions in other jurisdictions only emphasize this court's increasing isolation in continuing to uphold our acquittal-first step instructions in first degree murder cases.

The majority discusses a Minnesota case and a California case for support that a court need not explicitly instruct the jury that the State must prove the absence of a heat of passion defense if the instructions, viewed as a whole, are sufficient to convey the State's burden of proof. Neither case supports its holding.

The California case is distinguishable because the court was dealing with a different issue. In California, malice aforethought is an element of both first degree murder and second degree murder. But first degree murder requires additional proof that the defendant deliberated and premeditated the murder. A provocation that subjectively precludes a person from deliberating and premeditating a murder negates those elements and reduces a homicide from first degree to second

degree murder. In contrast, a provocation that would cause an objectively reasonable person to react with deadly passion negates the element of malice and reduces a murder to voluntary manslaughter.[109] Since at least 2000, the California Supreme Court has required the State to prove the absence of a provocation when the issue is properly raised.[110]

The California Court of Appeals did not decide *People v. Hernandez*,[111] the case the majority relies on, until 2010. An instruction on the State's burden to disprove the provocation was not at issue in *Hernandez*. The trial court presumably followed the California Supreme Court's earlier mandate. The trial court also instructed the jury that a provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The issue in *Hernandez* was whether the defendant was entitled to a more specific instruction on how the jury should consider a provocation, assuming it found that one existed, in determining the defendant's guilt of second degree murder or manslaughter. The California Court of Appeals concluded that a trial court is not required to give the more specific instruction unless it is requested—which the defendant did not do. The court further concluded that the instructions, read as a whole, were adequate to ensure that the jury understood the claimed provocation was also relevant to negating premeditation and deliberation. It noted that the trial court had separately instructed the jury that a decision to kill which is made rashly, impulsively, or without careful consideration is not deliberate and premeditated.

*Hernandez* illustrates that California law is more lenient on the effect of a provocation and that its jury instructions are more explicit than Nebraska's on the relationship of a

---

[109] See *People v. Hernandez*, 183 Cal. App. 4th 1327, 107 Cal. Rptr. 3d 915 (2010).

[110] See *People v. Rios*, 23 Cal. 4th 450, 2 P.3d 1066, 97 Cal. Rptr. 2d 512 (2000).

[111] *Hernandez, supra* note 109.

provocation to the elements of first degree murder. The instructions here did not explain the mutually exclusive relationship between a provocation and any element of murder. But more to the point, *Hernandez* did not hold that a court need not instruct a jury on the State's burden to prove the absence of a provocation when the issue is raised. The court simply was not addressing that issue.

The Minnesota case that the majority cites, *State v. Auchampach*,[112] is distinguishable for a different reason. Minnesota's homicide statutes are significantly different than Nebraska's. Most important, the first degree murder statute does not have a malice element. Instead, it sets out seven acts that constitute the crime. The first listed act is intentionally causing the death of another with premeditation; the other acts are causing the death of another under specified circumstances.[113] Additionally, the voluntary manslaughter statute does not have a "without malice" element.[114]

The defendant in *Auchampach* was charged with premeditated murder. The trial court instructed the jury that under Minnesota law, a defendant is guilty of manslaughter and not murder if the defendant killed in the heat of passion. It further instructed that if the jurors concluded the defendant had committed a crime but was in doubt about which crime, they could only find him guilty of manslaughter. Finally, the court instructed the jury that an "unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated."[115] But the court refused to instruct the jury that the prosecution had the burden to prove the absence of a provocation.

On appeal, the Minnesota Supreme Court concluded that the State was not constitutionally required to disprove a provocation because the absence of a heat of passion was not

---

[112] *State v. Auchampach*, 540 N.W.2d 808 (Minn. 1995).

[113] See Minn. Stat. § 609.185 (2014).

[114] See Minn. Stat. § 609.20(1) (2014).

[115] *Auchampach, supra* note 112, 540 N.W.2d at 818.

an element of premeditated murder. It nonetheless held that in future cases, a court must explicitly instruct a jury that the prosecution has the burden to prove the absence of an adequately raised provocation. And it concluded that the trial court's instructions had been adequate to convey the prosecution's burden to disprove the provocation.

But because of the difference in Minnesota's murder statute, *Auchampach* is not persuasive authority for jury instructions under our homicide statutes. The court had no reason to consider whether a provocation claim would negate a malice element of murder. Neither malice nor its converse exists in Minnesota's homicide statutes. It is true that the jury instructions indicated that a provocation defense negated the premeditated element of murder under Minnesota's statutes. But the important point here is that the court corrected its instructions to explicitly inform juries that the State must prove the absence of a provocation. And the only reason for explicitly requiring this instruction is to clarify to a jury that the State bears the risk of error on the critical fact in dispute (provocation) that distinguishes murder from manslaughter.

In short, like the federal cases that the majority cites, the state cases it cites are distinguishable. They are either not dealing with homicide statutes that retain the common-law concepts of "malice" and "without malice," or the instructions that were given at least required the jury to consider that an element of the crime and a provocation defense could not coexist.

The lack of supporting cases in the majority opinion is not surprising. Even when the U.S. Supreme Court decided *Mullaney* in 1975, the large majority of states already required "the prosecution to prove the absence of the heat of passion on sudden provocation beyond a reasonable doubt."[116] Since *Mullaney* was issued, other courts have reached the same

___

[116] *Mullaney, supra* note 41, 421 U.S. at 696, citing Wayne R. LaFave & Austin W. Scott, Jr., Handbook on Criminal Law 539-540 (1972).

conclusion.[117] And many state legislatures have abandoned the common-law concept of malice,[118] perhaps, in part, because of the burden of proof problems created by this element.

But none of the cases cited by the majority, state or federal, upheld an acquittal-first step instruction that precluded the jury from considering the mitigating circumstance of a sudden provocation in determining a defendant's guilt of murder.

SUMMATION

Despite concluding that Nebraska's acquittal-first step instruction does not offend due process, the majority could, of course, require an explicit instruction in future cases that the State has the burden to prove the defendant did not kill as the result of a sudden quarrel provocation. The majority claims that our instruction implicitly requires the State to disprove a provocation defense. So it could follow the Minnesota Supreme Court's lead, and make this burden explicit to ensure that the jury understands that the State bears the risk of nonpersuasion on the issue of provocation.

Alternatively, it could have, and should have, extended *State v. Smith*[119] to first degree murder prosecutions. Under *Smith*, § 29-2027 is a procedural rule for murder prosecutions that requires a jury instruction to clarify the jury's options of conviction, depending on its resolution of a provocation defense. Instead, the majority clings to a legal fiction that our acquittal-first step instruction poses no due process problem. It reaches this conclusion despite this court's requirement that a sudden quarrel provocation negate the deliberate, premeditated, and malice elements of first degree murder.

---

[117] See, e.g., *Rios, supra* note 110; *Reddick, supra* note 34; *Commonwealth v. Nieves*, 394 Mass. 355, 476 N.E.2d 179 (1985); *Auchampach, supra* note 112; *Crawford, supra* note 71.

[118] See, e.g., *Patterson, supra* note 19; Ala. Code § 13A-6-2, commentary (2006); Ky. Rev. Stat. Ann. § 507.020, commentary (West 2006); La. Stat. Ann. § 14:30, reporter's comment (2007); Minn. Stat. § 609.185 (2014).

[119] *Smith, supra* note 1.

Although the majority acknowledges that the U.S. Supreme Court's decision in *Smith v. U.S.*[120] applies here, it interprets the decision so that it is meaningless. But *Smith* clarified that the Due Process Clause requires the State to overcome a provocation defense because it negates three elements of first degree murder. I believe that the majority's interpretation is wrong. Because of the recent changes in our own case law and the U.S. Supreme Court's recent clarification of due process requirements, I can no longer agree that our instruction complies with due process. I dissent.

Miller-Lerman, J., joins in this dissent.

---

[120] *Smith, supra* note 50.